UNITED ZINC & CHEMICAL COMPANY *v.* BRITT ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 164. Submitted March 13, 1922.—Decided March 27, 1922.

1. A landowner owes no general duty to keep his land safe for children of tender years, or even free from hidden danger, if he has not directly or by implication invited them there. P. 275.
2. A road is not an invitation to leave it elsewhere than at its end. P. 276.
3. Defendant owned a tract, on the outskirts of a town, on which was an open and abandoned cellar wherein water had accumulated, clear in appearance but dangerously poisoned with chemicals resulting from manufacturing operations formerly conducted there by the defendant. A traveled way passed within 120 feet of the pool and paths crossed the tract. Children came upon the land, entered the water, were poisoned and died. Defendant knew the condition of the water; but the pool, if visible to the children without trespass, was not proven to have caused their entry, nor were children in the habit of going to it. *Held,* that no license or invitation could be implied and that the defendant was not liable. P. 274.
264 Fed. 785, reversed.

CERTIORARI to a judgment of the Circuit Court of Appeals, which affirmed a judgment against the above petitioner in an action brought in the District Court for Kansas, by the above respondents, to recover damages for the death of their two children. See Kans. Gen. Stats., 1915, §§ 7323, 7324.

Mr. *Henry D. Ashley* and *Mr. William S. Gilbert* for petitioner.

The maxim *sic utere tuo* is not a principle of use in the solution of difficult legal questions but a moral precept, which "teaches nothing but a benevolent yearning." Holmes, J., in 8 Harv. Law Rev. 3; Terry, Lead. Prin. Anglo-Amer. Law, §§ 10, 11; *Bonomi* v. *Backhouse,* 96 E. C. L. 641; *Frost* v. *Eastern R. R. Co.,* 64 N. H. 220; *Ratte* v. *Dawson,* 50 Minn. 450; *Walker* v. *Railroad Co.,* 105 Va. 226; *Deane* v. *Clayton,* 7 Taunt. 489; *Knight* v. *Abert,* 6 Pa. St. 472.

At common law, in force in Kansas by statutory enactment, there is no obligation on the part of landowners to maintain fences about their land, and no statute in Kansas requires it. *Union Pacific Ry. Co.* v. *Rollins,* 5 Kans. 177. Owners of unenclosed land are not required to make them safe for trespassing cattle, *Knight* v. *Abert,* 6 Pa. St. 472; *Hughes* v. *Railroad Co.,* 66 Mo. 325; or for children, *Felton* v. *Aubrey,* 74 Fed. 356.

The fact that there was a path through the land by which the children entered for their convenience in reaching their father's camp, did not authorize them to stray from this pathway. And the defendant by merely suffering or permitting such voluntary use, did not insure that its premises were safe.

That children of tender years under no circumstances are classed with idlers, licensees or trespassers is contrary to the decisions of the Court of Appeals in the *Aubrey Case, supra;* and in *Duree* v. *Wabash Ry. Co.,* 241 Fed. 454; *McCarthy* v. *Railroad Co.,* 240 Fed. 602; *Ellsworth* v. *Metheney,* 104 Fed. 119; *Hastings* v. *Railroad Co.,* 143 Fed. 260; *Heller* v. *Railroad Co.,* 265 Fed. 192; *Hardy* v. *Railroad Co.,* 266 Fed. 860. Distinguishing, *Pekin* v. *McMahon,* 154 Ill. 141, limited by *McDermott* v. *Burke,* 256 Ill. 401. See also, *Fincher* v. *Railroad Co.,* 143 La. 164; Elliott on Railroads, 2d ed., § 1259.

Distinguishing *Northern Pacific Ry. Co.* v. *Curtz,* 196 Fed. 367, and the other cases cited by the court below.

See also *Railroad Co.* v. *Bockoven,* 53 Kans. 279; Smith, in 11 Harv. Law Rev. 349; *Wilmot* v. *McPadden,* 79 Conn. 367; *Keffe* v. *Railroad Co.,* 21 Minn. 207; *Ryan* v. *Towar,* 128 Mich. 463; *Friedman* v. *Snare Co.,* 71 N. J. L. 605; *Railroad Co.* v. *Harvey,* 77 Oh. St. 235, 250; *Bottum's Admr.* v. *Hawks,* 84 Vt. 370; *Walsh* v. *Fitchburg R. R. Co.,* 145 N. Y. 301; *Fitzmaurice* v. *Connecticut R. & L. Co.,* 78 Conn. 406.

*Bird* v. *Holbrook,* 4 Bing. 626; *Loomis* v. *Terry,* 17 Wend. 496; *Wright* v. *Ramscott,* 1 Saund. 83; *Johnson* v. *Patterson,* 14 Conn. 1; and *State* v. *Moore,* 31 Conn. 479, are all cases where there was a wilful intent to injure trespassers and are obviously inapplicable. The difference between these cases and the *Stout Case,* 17 Wall. 652, is so plain as to need no discussion. *Salladay* v. *Old Dominion Copper Co.,* 12 Ariz. 124; *Stendal* v. *Boyd,* 73 Minn. 53.

The cases cited by Mr. Justice Hunt in rendering the opinion of the court in the *Stout Case,* except *Daley* v. *Railroad Co.,* 26 Conn. 591, (since overruled,) come within other well-defined exceptions to the general rule as is clearly pointed out in *Daniels* v. *Railroad Co.,* 154 Mass. 349, and in *Walker* v. *Railroad Co.,* 105 Va. 226, and therefore do not add anything to the authority of the *Stout Case.*

The remarkable confusion which exists today among the federal courts of the several circuits and among the courts of the several States over the question of liability of landowners to trespassing children, which has followed the decision of the *Stout Case,* is probably due to the fact that the *Stout Case* is an exception to the rules of nonliability of a landowner for accidents from visible causes to trespassers on his premises, at common law, and the uncertainty as to what actually was decided in the *Stout Case,* caused by the citation of such cases as *Bird* v. *Holbrook, supra,* and other spring gun cases. That

such is the fact can be seen from *Union Pacific Ry. Co.* v. *McDonald, supra,* approving the *Stout Case,* and citing *Townsend* v. *Wathen,* 9 East, 277, 299.

The landowner owes no duty to trespassers or volunteers going upon his land for their own purposes; to maintain it in any particular condition for their benefit. *Sweeney* v. *Railroad Co.,* 10 Allen, 372; *Kelly* v. *Benas,* 217 Mo. 9.

The case does not fall within the turntable doctrine because: (1) this was not a dangerous and attractive machine; (2) children were not accustomed to play at or near this basement; (3) the Zinc Company had no knowledge of any danger to children; (4) no license can be implied to children to play at this spot.

The case does not fall within the attractive nuisance doctrine because: (1) it does not appear that this basement was attractive to children; (2) the evidence does not establish the fact that the basement was visible from off the premises; (3) no invitation to enter can be implied.

Nor does the case fall within the theory of the trap or spring gun cases because: (1) the Zinc Company had no knowledge of the existence of this basement so filled with water; (2) the element of wilful intent is completely lacking.

In the following cases the turntable doctrine was not accepted: *Daniels* v. *Railroad Co.,* 154 Mass. 349; *Ryan* v. *Towar,* 128 Mich. 463; *Fusselman* v. *Yellowstone Valley Co.,* 53 Mont. 254; *Frost* v. *Railroad Co.,* 64 N. H. 220; *Delaware, Lackawanna & Western R. R. Co.* v. *Reich,* 61 N. J. L. 635; *Friedman* v. *Snare & Triest Co.,* 71 N. J. L. 605; *Walsh* v. *Railroad Co.,* 145 N. Y. 301; *Gillespie* v. *McGowan,* 100 Pa. St. 150; *Thompson* v. *Baltimore & Ohio R. R. Co.,* 218 Pa. St. 444; *Paolino* v. *McKendall,* 24 R. I. 432; *Bottum's Administrator* v. *Hawks,* 84 Vt. 370; *Walker* v. *Railroad Co.,* 105 Va. 226;

*Conrad* v. *Railroad Co.,* 64 W. Va. 176; *Ritz* v. *Wheeling,* 45 W. Va. 262; *Uthermohlen* v. *Bogg's Run Co.,* 50 W. Va. 457.

The following cases followed the *Stout Case* and adopted the turntable doctrine: *Barrett* v. *Southern Pac. Co.,* 91 Cal. 296; *Daley* v. *Railroad Co.,* 26 Conn. 591; *Ferguson* v. *Railroad Co.,* 75 Ga. 637; *Pekin* v. *McMahon,* 154 Ill. 141; *Edgington* v. *Railroad Co.,* 116 Ia. 410; *Kansas Central Ry. Co.* v. *Fitzsimmons,* 22 Kans. 686; *Bransom* v. *Labrot,* 81 Ky. 638; *Keffe* v. *Railroad Co.,* 21 Minn. 207; *Koons* v. *Railroad Co.,* 65 Mo. 592; *A. & N. R. Co.* v. *Bailey,* 11 Neb. 332; *Harriman* v. *Railroad Co.,* 45 Oh. St. 11; *Bridger* v. *Railroad Co.,* 25 S. Car. 24; *Evansich* v. *Railroad Co.,* 57 Tex. 126; *Railroad Co.* v. *Cargille,* 105 Tenn. 628.

The following cases, taken from jurisdictions which in earlier cases approved the turntable cases, show that the tendency in them is to limit the doctrine strictly to turntable cases and not to extend it so as to embrace the so-called "attractive nuisance" doctrine: *Peters* v. *Bowman,* 115 Cal. 345; *Wilmot* v. *McPadden,* 79 Conn. 367; *Railroad Co.* v. *Beavers,* 113 Ga. 398; *Stendal* v. *Boyd,* 73 Minn. 53; *Kelly* v. *Benas,* 217 Mo. 1; *Wheeling R. R. Co.* v. *Harvey,* 77 Oh. St. 235; *Dobbins* v. *Railroad Co.,* 91 Tex. 60.

The question here presented is one of first impression notwithstanding *Union Pacific Ry. Co.* v. *McDonald, supra,* because what was said in that case on the subject of attractive nuisances was *dicta.*

*Mr. F. J. Oyler* and *Mr. Fred Robertson* for respondents.

This case is governed by the rule of the turntable, attractive nuisance and hidden danger cases, now firmly established by the law of Kansas as well as by this court. *Railroad Co.* v. *Stout,* 11 Wall. 657; *Union Pacific Ry. Co.* v. *McDonald,* 152 U. S. 262; *Baltimore & Potomac R. R. Co.* v. *Cumberland,* 176 U. S. 232.

The decisions of the Supreme Court of Kansas directly in point are *Roman v. Leavenworth,* 95 Kans. 513; *Price v. Water Co.* 58 Kans. 551; *Biggs v. Wire Co.,* 60 Kans. 217; *Electric Co. v. Healy,* 65 Kans. 798; *Harper v. Topeka,* 92 Kans. 11; *Kansas City v. Siese,* 71 Kans. 283.

This pond was attractive. The plaintiff in error had knowledge of its danger, and left no barriers, warnings or danger signals of any kind. The boys had no knowledge whatever of the hidden danger, and, being of tender years, would have been unable to appreciate the danger had they even known that the pond had once been used as a part of an acid plant. This pool could readily be seen by the boys while they were on a well traveled road, running north and southwest of it.

The rule we are contending for is upheld in *Heller v. New York, N. H. & H. R. R. Co.,* 265 Fed. 192; and *American Ry. Express Co. v. Crabtree,* 271 Fed. 287.

Even though the boys were trespassers, which they were not, the plaintiff in error would be liable. They were not trespassers because of their tender age and because the plaintiff in error maintained three well traveled roads over its premises, which were as many invitations to the public and these boys to enter, with assurance that if they did they would encounter no danger. *Paolino v. McKendall,* 24 R. I. 432; *Hobbs v. Blanchard & Sons Co.,* 74 N. H. 116; *Scheuerman v. Scharfenberg,* 163 Ala. 337; *Walsh v. Fitchburg R. R. Co.,* 145 N. Y. 301.

The poisons were as much of a hidden danger and as fatal a death trap as a spring gun; and hence come under the rule announced in *Palmer v. Gordon,* 173 Mass. 410.

The statute of Kansas under which this action was brought and prosecuted is Gen. Stats., 1915, §§ 7323, 7324.

There was sufficient evidence to justify the court in giving the instruction complained of. *Clark v. Powder Co.,* 94 Kans. 268. No exception was taken to the court's refusal to give instructions requested.

It is not sufficient to challenge the charge given by the court as a whole. *Lincoln Savings Bank Co.* v. *Allen,* 82 Fed. 148. No exception was taken to the overruling of the motion for a directed verdict.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit brought by the respondents against the petitioner to recover for the death of two children, sons of the respondents. The facts that for the purposes of decision we shall assume to have been proved are these. The petitioner owned a tract of about twenty acres in the outskirts of the town of Iola, Kansas. Formerly it had there a plant for the making of sulphuric acid and zinc spelter. In 1910 it tore the building down but left a basement and cellar, in which in July, 1916, water was accumulated, clear in appearance but in fact dangerously poisoned by sulphuric acid and zinc sulphate that had come in one way or another from the petitioner's works, as the petitioner knew. The respondents had been travelling and encamped at some distance from this place. A travelled way passed within 120 or 100 feet of it. On July 27, 1916, the children, who were eight and eleven years old, came upon the petitioner's land, went into the water, were poisoned and died. The petitioner saved the question whether it could be held liable. At the trial the Judge instructed the jury that if the water looked clear but in fact was poisonous and thus the children were allured to it the petitioner was liable. The respondents got a verdict and judgment, which was affirmed by the Circuit Court of Appeals. 264 Fed. 785.

*Union Pacific Ry. Co.* v. *McDonald,* 152 U. S. 262, and kindred cases were relied upon as leading to the result, and perhaps there is language in that and in *Railroad Co.* v. *Stout,* 17 Wall. 657, that might seem to justify it; but the doctrine needs very careful statement not to make an unjust and impracticable requirement. If the children had been adults they would have had no case.

They would have been trespassers and the owner of the land would have owed no duty to remove even hidden danger; it would have been entitled to assume that they would obey the law and not trespass. The liability for spring guns and mantraps arises from the fact that the defendant has not rested on that assumption, but on the contrary has expected the trespasser and prepared an injury that is no more justified than if he had held the gun and fired it. *Chenery* v. *Fitchburg R. R. Co.*, 160 Mass. 211, 213. Infants have no greater right to go upon other peoples' land than adults, and the mere fact that they are infants' imposes no duty upon landowners to expect them and to prepare for their safety. On the other hand the duty of one who invites another upon his land not to lead him into a trap is well settled, and while it is very plain that temptation is not invitation, it may be held that knowingly to establish and expose, unfenced, to children of an age when they follow a bait as mechanically as a fish, something that is certain to attract them, has the legal effect of an invitation to them although not to an adult. But the principle if accepted must be very cautiously applied.

In *Railroad Co.* v. *Stout,* 17 Wall. 657, the well-known case of a boy injured on a turntable, it appeared that children had played there before to the knowledge of employees of the railroad, and in view of that fact and the situation of the turntable near a road without visible separation, it seems to have been assumed without much discussion that the railroad owed a duty to the boy. Perhaps this was as strong a case as would be likely to occur of maintaining a known temptation, where temptation takes the place of invitation. A license was implied and liability for a danger not manifest to a child was declared in the very similar case of *Cooke* v. *Midland Great Western Ry. of Ireland* [1909], A. C. 229.

In the case at bar it is at least doubtful whether the water could be seen from any place where the children lawfully

were and there is no evidence that it was what led them to enter the land. But that is necessary to start the supposed duty. There can be no general duty on the part of a landowner to keep his land safe for children, or even free from hidden dangers, if he has not directly or by implication invited or licensed them to come there. The difficulties in the way of implying a license are adverted to in *Chenery* v. *Fitchbury R. R. Co.*, 160 Mass. 211, 212, but need not be considered here. It does not appear that children were in the habit of going to the place; so that foundation also fails.

*Union Pacific Ry. Co.* v. *McDonald*, 152 U. S. 262, is less in point. There a boy was burned by falling into burning coal slack close by the side of a path on which he was running homeward from other boys who had frightened him. It hardly appears that he was a trespasser and the path suggests an invitation; at all events boys habitually resorted to the place where he was. Also the defendant was under a statutory duty to fence the place sufficiently to keep out cattle. The decision is very far from establishing that the petitioner is liable for poisoned water not bordering a road, not shown to have been the inducement that led the children to trespass, if in any event the law would deem it sufficient to excuse their going there, and not shown to have been the indirect inducement because known to the children to be frequented by others. It is suggested that the roads across the place were invitations. A road is not an invitation to leave it elsewhere than at its end.

*Judgment reversed.*

MR. JUSTICE CLARKE, with whom concurred THE CHIEF JUSTICE and MR. JUSTICE DAY, dissenting.

The courts of our country have sharply divided as to the principles of law applicable to "attractive nuisance" cases, of which this one is typical.

At the head of one group, from 1873 until the decision of today, has stood the Supreme Court of the United States, applying what has been designated as the "Humane" doctrine. Quite distinctly the courts of Massachusetts have stood at the head of the other group, applying what has been designated as a "Hard Doctrine"—the "Draconian Doctrine." Thompson on Negligence, vol. I, §§ 1027 to 1054 inclusive, especially §§ 1027, 1047 and 1048; Cooley on Torts, 3d ed., pp. 1269, *et seq.*

In 1873, in *Railroad Co.* v. *Stout*, 17 Wall. 657, this court, in a turntable case, in a unanimous decision, strongly approved the doctrine that he who places upon his land, where children of tender years are likely to go, a construction or agency, in its nature attractive, and therefore a temptation, to such children, is culpably negligent if he does not take reasonable care to keep them away, or to see that such dangerous thing is so guarded that they will not be injured by it when following the instincts and impulses of childhood, of which all mankind has notice. The court also held that where the facts are such that different minds may honestly draw different conclusions from them, the case should go to the jury.

Twenty years later the principle of this *Stout Case* was elaborately reëxamined and unreservedly affirmed, again in a unanimous decision in *Union-Pacific Ry. Co.* v. *McDonald,* 152 U. S. 262. In each of these cases the contention that a child of tender years must be held to the same understanding of the law with respect to property rights as an adult and that therefore, under the circumstances of each, the child injured was a trespasser, was considered and emphatically rejected. The attractiveness of the unguarded construction or agency—the temptation of it to children—is an invitation to enter the premises that purges their technical trespass. These have been regarded as leading cases on the subject for now almost fifty years and have been widely followed by state and federal

courts,—by the latter so recently as *Heller* v. *New York, N. H. & H. R. R. Co.*, 265 Fed. 192, and *American Ry. Express Co.* v. *Crabtree,* 271 Fed. 287.

The dimensions of the pool of poisoned water were about 20x45 feet. It was 2½ to 3 feet deep in part and in part 10 or more feet deep. A photograph in the record gives it the appearance of an attractive swimming pool, with brick sides and the water coming nearly to the top of the wall. The water is described by the witnesses as appearing to be clear and pure, and, on the hot summer day on which the children perished, attractively cool.

This pool is indefinitely located within a tract of land about 1,000 feet wide by 1,200 feet long, about which there had not been any fence whatever for many years, and there was no sign or warning of any kind indicating the dangerous character of the water in the pool. There were several paths across the lot, a highway ran within 100 to 120 feet of the pool, and a railway track was not far away. The land was immediately adjacent to a city of about 10,000 inhabitants, with dwelling houses not far distant from it. The testimony shows that not only the two boys who perished had been attracted to the pool at the time but that there were two or three other children with them, whose cries attracted men who were passing nearby, who, by getting into the water, succeeded in recovering the dead body of one child and in rescuing the other in such condition that, after lingering for a day or two, he died. The evidence shows that the water in the pool was highly impregnated with sulphuric acid and zinc sulphate, which certainly caused the death of the children, and that the men who rescued the boys suffered seriously, one of them for as much as two weeks, from the effects of the poisoned water.

The case was given to the jury in a clear and comprehensive charge, and the judgment of the District Court upon the verdict was affirmed by the Circuit Court of

Appeals.  The court charged the jury that if the water in the pool was not poisonous and if the boys were simply drowned there could be no recovery, but that if it was found, that the defendant knew or in the exercise of ordinary care should have known, that the water was impregnated with poison, that children were likely to go to its vicinity, that it was in appearance clear and pure and attractive to young children as a place for bathing, and that the death of the children was caused by its alluring appearance and by its poisonous character, and because no protection or warning was given against it, the case came within the principle of the " attractive nuisance " or " turntable " cases and recovery would be allowed.

. This was as favorable a view of the federal law, as it has been until today, as the petitioner deserved.  The Supreme Court of Illinois, on the authority of the *Stout Case,* held a city liable for the death of a child drowned in a similar pool of water not poisoned.  *City of Pekin* v. *McMahon,* 154 Ill. 141.

· The facts, as stated, make it very clear that in the view most unfavorable to the plaintiffs below there might be a difference of opinion between candid men as to, whether the pool was so located that the owners of the land should have anticipated that children might frequent its vicinity, whether its appearance and character rendered it attractive to childish instincts so as to make it a temptation to children of tender years, and whether, therefore, it was culpable negligence to maintain it in that location, unprotected and without warning as to its poisonous condition.  This being true, the case would seem to be one clearly for a jury, under the ruling in the *Stout Case, supra.*

Believing as I do that the doctrine of the *Stout* and *McDonald Cases,* giving weight to, and making allowance, as they do, for, the instincts and habitual conduct of children of tender years, is a sound doctrine, calculated to

make men more reasonably considerate of the safety of the children of their neighbors, than will the harsh rule which makes trespassers of little children which the court is now substituting for it, I cannot share in setting aside the verdict of the jury in this case, approved by the judgments of two courts, upon what is plainly a disputed question of fact and in thereby overruling two decisions which have been accepted as leading authorities for half a century, and I therefore dissent from the judgment and opinion of the court.