# PETERSON v. FARMERS' GRAIN & MILLING CO.

No. 4487.   Decided April 2, 1927.   (255 P. 436.)

*J. C. Walters,* of Santa Monica, Cal., for appellant.

*Fonnesbeck & Nelson,* of Logan, for respondent.

CHERRY, J.

The plaintiff had a verdict and judgment for $3,500 damages for personal injuries, and the defendant appeals. The case is based on negligence under the doctrine of attractive nuisances or the "turntable cases." The refusal of

the trial court to direct a verdict for defendant is the only assignment of error necessary to be considered.

The undisputed facts are that for 17 years the defendant owned and operated a grain elevator at Cache Junction, a village of 200 population, in Cache county, Utah. The grain elevator was situated and contained in a main building about 40 feet square, and 80 or 90 feet high, built upon the right of way of a railroad. Adjoining the main building was a scalehouse, on the floor of which was a platform designed for weighing loaded wagons. Double doors at opposite sides of the scalehouse afforded entrance to an exit therefrom. Entrance to the main building was had through a door from the scalehouse. Inside the main building the ground floor was divided into compartments appropriate to the business. The door from the scalehouse to the main building opened into a compartment which contained a scale beam and weighing desk, and in the corner of which was constructed a device called a man lift for the use of employees at the grain elevator. This man lift constitutes the nuisance complained of, and is the place where, and the means whereby, the plaintiff was injured. The man lift consisted of a platform 2¼ feet square, with posts at each corner converging at the top to a horizontal beam, to which a rope was attached, passing over a pulley at the top of the building, and connected with a boxed-in counterweight weighing about 280 pounds, which was the motive power for the lift. Two upright beams on opposite sides of the lift extended to the top of the building and acted as guides for the lift when in motion. Under the platform of the man lift was a clutch which held the man lift in place and prevented the same from ascending, except by pressure upon a bolt extending from the clutch through the platform of the lift. A smaller rope, designated a hand rope, connected with the man lift, was used by the operator to start the lift. The lift was operated by stepping upon the platform, pressing with the foot the bolt in the floor, thereby releasing the clutch, and by pulling on the hand rope. It would rise to a height of

75 feet, and could be stopped at any time by releasing the pressure on the clutch bolt. There was also a bolt to be used as a lock by inserting the same in a hole in the framework just above the platform level.

The ordinary business transacted at the grain elevator was buying and storing grain. The manager of the elevator, on his own account also dealt in coal. Farmers came from the surrounding country to deliver grain and to buy coal from time to time. It was the practice to drive their wagons into the scalehouse onto the scale platform to be weighed. It was proved that on numerous occasions these farmers were accompanied by children who would play about the elevator while their parents were transacting their business. There was no testimony, however, that any child was ever seen to play on or with the man lift in controversy, nor was there any proof that the place was a playground or haunt where unattended children were permitted to congregate and play. It was merely shown that at times children who came with their parents, or other adults, played in and around the elevator. There was testimony, uncontradicted, that an adult person was in charge of the premises and at or near the elevator building whenever any business was being transacted there, and that when no such person was there the building was locked.

On May 27, 1924, the plaintiff, a boy seven years of age, was residing with his parents at Newton, a small town about 2½ miles from Cache Junction. In the afternoon of that day his 19 year old brother went to Cache Junction for a load of coal, and the plaintiff went with him. They went to the elevator in question, and had their wagon weighed, and the older brother drove a few rods away to load his wagon from a freight car. While his brother was loading coal the plaintiff was playing about the premises alone. The doors to the scalehouse and into the main elevator building were open. The men in charge of the elevator had left it for a few minutes. One, who had weighed the empty

wagon, had gone over to a bank nearby, where he was employed. Another, the manager of the elevator, was present just before the accident, and saw the plaintiff around and climbing on the car where his brother was loading coal. The manager then left the premises to go on an errand, and was gone 10 or 15 minutes. During this interval the plaintiff went through the scalehouse and into the main elevator building. He had previously seen employees operate the man lift. He got on the man lift and started it in operation, and by means not clearly explained was severely injured. Attracted by a noise, his brother ran into the elevator, and found the plaintiff lying unconscious, with his leg under the man lift. The rope supporting the man lift was broken. It was evident that the plaintiff had gotten on the man lift, started it up, and that in some manner the rope broke and caused the man lift, with the plaintiff on it, to fall violently to the floor of the building. Upon substantially these facts the court declined to direct a verdict for the defendant, but submitted the case to the jury, and later declined to set aside a verdict for the plaintiff and grant a new trial.

The appeal presents the question of whether as a matter of law the jury, upon these facts, could properly find actionable negligence against defendant.

In support of the judgment the plaintiff relies upon the doctrine of attractive nuisances, or the turntable cases. This doctrine is to the general effect that under certain circumstances it is actionable negligence to leave on one's premises an unguarded dangerous thing, to which children are likely to be attracted for sport or play. This rule of liability is subject to numerous limitations, and "needs very careful statement not to make it an unjust and impracticable requirement," and "the principle, if accepted, must be cautiously applied." *United Zinc & Chemical Co.* v. *Britt*, 258 U. S. 268, 42 S. Ct. 299, 66 L. Ed. 615, 36 A. L. R. 28. The subject has been before this court in at

least five cases. *Brown* v. *Salt Lake City*, 33 Utah, 222, 93 P. 570, 14 L. R. A. (N. S.) 619, 126 Am. St. Rep. 828, 14 Ann. Cas. 1004; *Smalley* v. *Railroad*, 34 Utah, 423, 98 P. 311; *Charvoz* v. *Salt Lake City*, 42 Utah, 455, 131 P. 901, 45 L. R. A. (N. S.) 652; *Bogden* v. *L. A. & S. L. R. Co.*, 59 Utah, 505, 205 P. 571; *Payne* v. *Utah-Idaho S. Co.*, 62 Utah, 598, 221 P. 568. In one of these cases only was liability upheld. In the other four it was denied.

This doctrine of liability is an exception to the general rule, made in favor of children. There is no such liability to persons of discretion or maturity. And the rule in favor of children rests, primarily upon the theory of implied invitation. "If, therefore, the owner places something on his premises which is easily accessible to children, and which is alluring and attractve to their childish propensities, and excites their curiosity and desire for play, it, in effect, amounts to an implied invitation to them to come upon the premises." *Brown* v. *Salt Lake City, supra.* "The doctrine underlying the 'turntable cases' is that the leaving or maintaining of a dangerous and attractive machine, or other instrument or agency, upon one's premises, under circumstances which naturally tend to attract or allure young children of immature judgment, and to induce them to believe that they are at liberty to enter and handle and play with it, is tantamount to an implied invitation to enter. Hence, a corresponding duty is imposed upon the owner or occupant of the premises to prevent the intrusion, or to protect from personal injury such children as may be so attracted and thus induced to enter, and who are incapable of appreciating the attending dangers. The doctrine is founded upon the principle that when one sets a temptation before young children under circumstances which in law is equivalent to the holding out of an inducement to enter, he must use ordinary care to protect them from harm. It is but applying the general rule that, when one induces or invites another upon his premises, he must use ordinary care to avoid injuring him." *Smalley* v. *Railroad Co.*, supra.

In *United Zinc & Chemical Co.* v. *Britt,* supra, the court said:

"Infants have no greater right to go upon other people's land than adults, and the mere fact that they are infants imposes no duty upon landowners to expect them and to prepare for their safety. On the other hand the duty of one who invites another upon his land not to lead him into a trap is well settled, and while it is very plain that temptation is not invitation, it may be held that knowingly to establish and expose, unfenced, to children of an age when they follow a bait as mechanically as a fish, some thing that is certain to attract them, has the legal effect of an invitation to them although not to an adult. * * * There can be no general duty on the part of a landowner to keep his land safe for children, or even free from hidden dangers, if he has not directly or by implication invited or licensed them to come there."

Liability under this doctrine was denied in *N. Y., N. H. & H. R. Co.* v. *Fruchter,* 260 U. S. 121, 43 S. Ct. 38, 67 L. Ed. 173, for lack of facts or circumstances to establish implied invitation or license to the injured child to come in contact with the dangerous thing.

Considering the facts and circumstances of the present case, we are unable to find any sufficient evidence from which the jury could properly find that the defendant directly or by implication invited or licensed the plaintiff to enter its building or to handle or play with the man lift. The circumstances usually relied upon to establish such invitation are here conspicuously lacking. The dangerous instrument was not exposed to public view, nor easily accessible to children, but was inclosed in a building, on the exterior of which there was nothing unusual or attractive to children. The place was not a haunt or playgraund where children were accustomed to congregate and play. No child was ever known to handle or play with the thing complained of before. It was not left exposed and unguarded in such sense that it was a temptation or an inducement to the belief that children were at liberty to play upon it or with it. From the circumstances and situation no reasonable person would anticipate that during the short period it was

left unguarded a child would naturally be attracted to the thing and be exposed to danger by reason of it.

From the failure of the plaintiff to establish this essential element of his case, the court should have directed a verdict for the defendant. The judgment is reversed and the cause remanded for a new trial. Costs to appellant.

GIDEON and STRAUP, JJ., concur.

THURMAN, C. J., did not participate herein, being disqualified.

FRICK, J., died before announcement of decision.