# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-1981

State of Minnesota,
Respondent,

vs.

Michelle MacDonald Shimota,
Appellant.

**Filed February 16, 2016**

**Affirmed**
**Ross, Judge**

Dakota County District Court
File No. 19HA-CR-13-1371

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Daniel J. Fluegel, Benjamin J. Colburn, Fluegel Law Firm, Hastings, Minnesota (for respondent)

Stephen V. Grigsby, Minneapolis, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Stauber, Judge.

# S Y L L A B U S

1. Minnesota Statutes section 169.91, subdivision 1 (2012), does not require an arresting police officer to present a suspected impaired driver to a judge before the officer completes all administrative duties attendant to an impaired-driving arrest, including administering the implied-consent testing required by Minnesota Statutes section 169A.51 (2012).

2. A criminal defendant has no Sixth Amendment right to create a video recording of her trial.

# OPINION

**ROSS**, Judge

Appellant Michelle MacDonald Shimota grabbed her steering wheel, her gear shift knob, and a police officer's wrist to prevent police from removing her from her car when she refused to be taken into custody on suspicion of drunk driving. After the officers pulled her loose and took her to the police station, Shimota would not submit to a breath test, demanding to be taken before a judge. Shimota challenges her convictions of obstructing legal process and chemical-test refusal, arguing that police violated her statutory right to be taken immediately before a judge after her arrest, that the district court violated her alleged Sixth Amendment right to create a video recording of the trial, that the district court improperly instructed the jury on the crime of test refusal, and that the evidence does not prove obstruction. Because an arrestee's statutory right to be taken immediately before a judge after her arrest is not a mechanism for suspected drunk drivers to circumvent an officer's statutory duty to promptly administer a chemical test; because the Sixth Amendment does not grant a defendant the right to videotape her trial; because the district court acted within its discretion in fashioning the jury instructions; and because the evidence supports the verdict, we affirm Shimota's convictions.

## FACTS

Late one night in April 2013, Rosemount police officer Alex Eckstein followed a car that he clocked at eight miles per hour over the speed limit. Officer Eckstein noticed the car swerve within its lane and saw its left tires contact the yellow centerline. He initiated a traffic stop.

2

When the officer spoke with the car's only occupant, Michelle MacDonald Shimota, he noticed that she had watery eyes and smelled slightly of the odor of an alcoholic beverage. Officer Eckstein asked Shimota to step out of the car to perform field sobriety tests, but Shimota refused. He asked her several more times, and she continued to refuse, so he called Sergeant Bryan Burkhalter to assist. When Sergeant Burkhalter arrived, he also smelled the odor of an alcoholic beverage coming from Shimota's vehicle and asked her several times to exit the car. Both officers told Shimota she was under arrest. Shimota still refused to exit the car, and eventually the officers tried to forcibly remove her. Shimota resisted the officers' effort by grabbing the shift knob, the steering wheel, and Sergeant Burkhalter's wrist.

The officers finally pried Shimota free and took her to the police station, where Officer Eckstein read her the implied-consent advisory and asked her to submit to a breath test. He then gave her time to call a lawyer. Shimota spent 34 minutes making calls and then asked the officer to take her in front of a judge to perform the breath test. The officer refused, but he repeated his request that she take the test. Shimota refused, and the state charged her with test refusal, driving under the influence, and obstructing legal process.

Before her trial Shimota moved the district court to allow her to bring video recording equipment into the courtroom, asserting that she had a Sixth Amendment right to record the trial. The district court denied the motion. Both parties agreed that the model jury instruction for test refusal was confusing on the element of probable cause. The district court issued a different instruction, to which Shimota objected. The jury found Shimota

guilty of test refusal and obstructing legal process but not guilty of driving under the influence. Shimota appeals.

## ISSUES

I.      Did Minnesota Statutes section 169.91, subdivision 1, require the arresting police officer to present the appellant to a judge before he completed all administrative duties attendant to the impaired-driving arrest, including administering the implied-consent testing required by section 169A.51?

II.     Did the appellant have a Sixth Amendment right to create a video recording of her trial?

III.    Did the district court abuse its discretion when it instructed the jury on test refusal?

IV.    Did the state present sufficient evidence for the jury to find the appellant guilty of obstructing legal process?

## ANALYSIS

## I

Shimota argues first that police violated her right to be taken immediately to a judge before submitting to a breath test, based on her interpretation of Minnesota Statutes section 169.91, subdivision 1. On that foundation, she seems to argue that the officer's violation required the district court to suppress the test-refusal evidence, to acquit her of the test-refusal charge as a matter of law, to hold that her test refusal was reasonable and therefore not illegal, or at least to allow her to argue to the jury that she refused the test reasonably. We can address all of the arguments by assessing her premise that police violated her statutory right to be taken immediately to a judge before submitting to a breath test.

4

We interpret a statute primarily on its plain language in an effort to discern and effectuate the legislature's intent. Minn. Stat. § 645.16 (2012); Minn. Stat. § 645.08(1) (2012). In relevant part, the statute Shimota relies on provides as follows:

> When any person is arrested *for any violation of any law* or ordinance *relating to the operation* or registration of vehicles . . . the arrested person *shall be taken into custody and immediately taken before a judge* within the county in which the offense charged is alleged to have been committed and who has jurisdiction over the offenses and is nearest or most accessible with reference to the place where the arrest is made, in any of the following cases:
>
> (1)  when a person arrested demands an immediate appearance before a judge;
>
> . . . .
>
> (4)  when the person is arrested upon a charge of driving or operating or being in actual physical control of any motor vehicle while under the influence of intoxicating liquor or drugs.

Minn. Stat. § 169.91, subd. 1 (emphasis added). Police arrested Shimota on suspicion of driving "while under the influence of intoxicating liquor or drugs," which constitutes a violation of a law "relating to the operation . . . of vehicles." She is therefore correct that her arrest is subject to the statute.

The word "immediately" is the center of Shimota's argument, as she insists that the officer violated the statute by failing to immediately take her before a judge on her demand. The statute does not define "immediately." Shimota rightly urges a plain-meaning definition and application of that term. Our plain-language approach to statutory interpretation requires us to construe words and phrases by their common usage, Minn.

5

Stat. § 645.08(1), and in doing so we must not disregard "the letter of the law" in a pretextual quest for "the spirit" of the law, Minn. Stat. § 645.16. But we do not determine a word's common-usage meaning detached from its context. Rather, we consider "the words of a law *in their application to an existing situation*." Minn. Stat. § 645.16 (emphasis added).

Here we begin by recognizing that "immediate" carries a common understanding informed by its literal meaning. Tracing its literal meaning from its Latin origins, we know that the word means "not" (*in* or *im*) "intervening" (*mediatus*). *See* 7 *Oxford English Dictionary* 681 (2d ed. 1989). "Immediate" is therefore a relational word that joins two places, persons, or events with each other without any intervening place, person, or event. *See id.* When it concerns a place such as land, for example, "immediately" marks the lack of any significant real estate between identified properties, as in, "The land was immediately adjacent to a city of about 10,000 inhabitants." *United Zinc & Chem. Co. v. Britt*, 258 U.S. 268, 278, 42 S. Ct. 299, 301 (1922). When it concerns persons, "immediate" marks the lack of any other person linking two related individuals, such as, "[W]e held that a company rule prohibiting the full-time hiring of more than one member of an immediate family was unlawful marital status discrimination under our Human Rights Act." *Cybyske v. Indep. Sch. Dist. No. 196*, 347 N.W.2d 256, 260 (Minn. 1984).

And when the term refers to events, although "immediately" might mean "[o]ccurring without delay; instant," *Black's Law Dictionary* 816 (9th ed. 2009), as Shimota argues, the context might instead imply a longer period. For example, everyone would envision an instantaneous occurrence when reading that a patient's leg elevated

"immediately" after her doctor struck her tendon with a reflex hammer. But no one imagines instantaneous behavior when the context suggests otherwise, like when the supreme court says, "Slavik and Wall immediately appealed the district court's grant of summary judgment." *Wall v. Fairview Hosp. & Healthcare Servs.*, 584 N.W.2d 395, 401 n.2 (Minn. 1998). "Immediately" in that circumstance likely contemplates a matter of hours or even days, not seconds or minutes. In sum, "immediate" events might be separated either by short or long periods, depending on the context. The adjective informs us only that no significant related event has intervened.

Turning then to the use of "immediately" here, the statute directs that "the arrested person shall be taken into custody and immediately taken before a judge." Minn. Stat. § 169.91, subd. 1. Under Shimota's interpretation, once she demanded to see a judge, the officer had the duty to present her before one instantly. The argument is broader than Shimota makes it. If she is correct that paragraph (1) compelled the officer to present her before a judge instantly after she "demand[ed] an immediate appearance," then paragraph (4) had already created the same compulsion for her to be "immediately taken before a judge" on her arrest because she was "arrested upon a charge of driving . . . any motor vehicle while under the influence of intoxicating liquor." *Id.* This is because the phrase "immediately taken before a judge" in the body of the statute applies to both paragraphs identically. So under the statute, every person "arrested for any violation of any law . . . relating to the operation or registration of vehicles" *always* has the right to be "immediately taken before a judge" whether or not she ever "demands an immediate appearance before

7

a judge," so long as her "violation of . . . law" was "driving . . . under the influence." *See id*. We bear this additional context in mind as we interpret "immediately."

The term "immediately" has been unchanged in Minnesota Statutes section 169.91, subdivision 1, since its adoption in 1937 as a provision in the Highway Traffic Regulation Act. 1937 Minn. Laws ch. 464, art. 18, § 134, at 778–79. Except for technical changes in 1955 and 1983, the original language is unaltered, and the legislature appears to have given it little consideration in more recent years. The statute was patterned after the Uniform Act Regulating Traffic on Highways, which was approved by the fourth National Conference on Streets and Highways, held in May 1934. *See Lowen v. Pates*, 219 Minn. 566, 568, 18 N.W.2d 455, 456 (1945). The 1937 act was a nationalizing, comprehensive traffic statute, repealing several specific laws and all other inconsistent acts, *see* 1937 Minn. Laws ch. 464, at 732. The statute in 1937 read in relevant part as follows:

> Whenever any person is arrested for any violation of this act punishable as a misdemeanor, the arrested person shall be immediately taken before a magistrate within the county in which the offense charged is alleged to have been committed and who has jurisdiction of such offense and is nearest or most accessible with reference to the place where said arrest is made.

1937 Minn. Laws ch. 464, art. 18, § 134, at 778–79. Like the current law, the original provision applied to arrests for driving while intoxicated and other serious traffic offenses, such as hit and runs, negligent homicide, and collisions resulting in injury or death. *Id.* A related section in the 1937 act contemplated an officer's issuing a citation instructing an arrested person to appear in court at a specified date:

> Whenever a person is arrested for any violation of this act punishable as a misdemeanor *and such a person is not*

> *immediately taken before a magistrate as herein before required*, the arresting officer shall prepare in duplicate written notice to appear in court containing the name and address of such person, his driver's license or chauffeur's license number, the license of his vehicle, if any, the offense charged, and the time and place when and where such person shall appear in court.

1937 Minn. Laws ch. 464, art. 18, § 135(a), at 779 (emphasis added). Read together, the historical sections 134 and 135 indicate that persons arrested for violating the traffic act generally would be cited and released without pretrial detention, but they included an exception allowing for pretrial detention for more serious offenses, such as driving while intoxicated. We have interpreted the amended provision accordingly, holding that persons arrested under section 169.91, subdivision 1, may be detained rather than cited and released. *State v. Galarneault,* 354 N.W.2d 597, 600 (Minn. App. 1984) ("Instead of requiring release [the statute] authorizes detention of those charged with DWI.").

These alternate processes contemplated by the statute track the constitutional rights of arrestees historically. Detention following a warrantless arrest (as opposed to immediate release after a citation) has always included the right to prompt presentation before a judge or magistrate. *See County of Riverside v. McLaughlin,* 500 U.S. 44, 61–63, 111 S. Ct. 1661, 1672–73 (1991) (Scalia, J., dissenting) (recounting caselaw documenting the centuries-old English and American requirement that post-arrest detention required presentment of the accused to a judge as soon as practical after the arrest to support ongoing detention). The right to presentment before a judge as the defendant begins a potentially extended period of pretrial incarceration is embodied in the Fourth Amendment. *See Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S. Ct. 854, 863 (1975) (recognizing that "the Fourth Amendment requires

9

a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest"). The *Gerstein* Court concluded that warrantless arrests require the determination of probable cause to be made "by a judicial officer . . . promptly after arrest." *Id.* at 125, 95 S. Ct. at 868–69. Because the 1937 Minnesota legislature authorized officers to confine certain driving offenders rather than merely cite and release them, it necessarily incorporated the only procedural mechanism for the arrestee's potential post-arrest, pretrial release—the constitutionally required presentment before a judicial officer.

This historical backdrop behind the reason arrestees must appear before a judge helps us answer what is meant by "immediately," still today, in the statute's slightly amended form. The statute continues to direct that "the arrested person shall be taken into custody and immediately taken before a judge." We are convinced that the two procedurally significant events that carry the "immediate" relationship are the officer's completion of the custodial arrest process and the arrestee's presentation to a judge before she begins a potentially prolonged pretrial detention. This understanding best fits the Fourth Amendment's requirement. The *McLaughlin* Court observed that states that were meeting the constitutional duty directed that officials must present the arrestee before a judge immediately after "completing the administrative steps incident to arrest—*i.e.*, as soon as the suspect has been booked, photographed, and fingerprinted." 500 U.S. at 58, 111 S. Ct. at 1670–71. This understanding of "immediately" also squares the statute with criminal procedural rule 4.02, which likewise requires arrestees to "be brought before a judge without unnecessary delay." Minn. R. Crim. P. 4.02, subd. 5(1).

And as we have already suggested, the impaired-driving context similarly confirms this understanding of "immediately." Officers are statutorily directed to inform the suspect of the test requirement, including the right to consult with an attorney before deciding to submit to a test. Minn. Stat. § 169A.51, subd. 2(4) (2012). The officer must administer a chemical test. *Id.*, subd. 1(a). And he must do so within two hours of the arrestee's driving and report to the commissioner of public safety and the prosecutor if the arrestee refused to be tested. Minn. Stat. § 169A.20, subd. 1(5) (2012); Minn. Stat. § 169A.52, subd. 1 (2012). In this context, if by "immediately" the legislature meant that the officer must take the suspected drunk driver before a judge instantly upon handcuffing (or on demand at any time, even before the testing process is complete) the officer could never complete his statutory, administrative implied-consent duties. We presume that the legislature is aware of its own laws. *Pecinovsky v. AMCO Ins. Co.*, 613 N.W.2d 804, 809 (Minn. App. 2000), *review denied* (Minn. Sept. 26, 2000). We therefore cannot agree with Shimota that the legislature intended that officers take drunk drivers straight to a judge, interrupting or preventing the administrative duties that must be completed before the arrest process ends. We add that even if she were correct, and the two statutes impose conflicting duties on the arresting officer, still Shimota would not prevail because the actually conflicting newer statute (here, the implied-consent law) would prevail over the older one (the immediate judicial-presentation law). Minn. Stat. § 645.26, subd. 4 (2012) (directing that in actual conflicts, "the law latest in date of final enactment shall prevail").

We must ultimately reject Shimota's contention that the officer violated her statutory right to be taken "immediately" before a judge following her arrest or following

her demand, before she was given the opportunity to decide whether to submit to a breath test. Her arrest was not complete until the administrative duties attending her arrest were complete. One officer testified that Shimota was released immediately after the booking process concluded. Shimota was not entitled to be brought before a judge because she was released from custody "immediately" after her arrest, enduring no post-arrest pretrial confinement. And because we hold that the officer did not violate Shimota's statutory right to be taken immediately before a judge, we do not address whether a violation carries the various legal consequences that she urges.

## II

Shimota moved to record the trial implicitly under Minnesota Rule of General Practice 4.02(c), which allows for video recording only if all parties consent. She relied expressly on the Sixth Amendment, not the rule. The district court denied her motion after the state refused to consent. Shimota argues that the district court's denial violated her Sixth Amendment right to a public trial. This presents a question of constitutional law, which we review de novo. *State v. Bobo*, 770 N.W.2d 129, 139 (Minn. 2009).

Shimota offers no authority, either binding or persuasive, that holds or suggests that a defendant has a constitutional right to record her own trial. She instead extrapolates the asserted right from other rights. She reminds us that a defendant has the right to a public trial and that allowing cameras in the courtroom constitutes no per se violation of a defendant's constitutional rights. *See Chandler v. Florida*, 449 U.S. 560, 573–74, 101 S. Ct. 802, 809 (1981) (holding no absolute constitutional bar to electronic media coverage). She also highlights the First Amendment's relationship to the right to a public

12

trial. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580, 100 S. Ct. 2814, 2829 (1980) (finding a necessarily implied First Amendment right to attend criminal trials). Shimota essentially argues that by superimposing a defendant's Sixth Amendment right to a public trial and the public's or media's First Amendment right to attend a trial or to record it over a defendant's objection, we should recognize that a defendant has a constitutional right to record her own trial.

Shimota's constitutional argument faces at least three legal problems. First, courts lack authority to create new constitutional rights—a privilege vested in "the people" and regulated by a specific amendment process. *See* U.S. Const. art. V. Second, we are aware of no court that has held or suggested that the asserted right to record one's own trial is implied by any express constitutional rights. And third, Shimota's argument that this alleged Sixth Amendment right arises from the Sixth Amendment's intersection with the First Amendment is unsupported by the purpose of the Sixth Amendment.

The Sixth Amendment right to a public trial belongs solely to the defendant and "guarantee[s] that the accused would be fairly dealt with and not unjustly condemned." *Estes v. Texas*, 381 U.S. 532, 538–39, 85 S. Ct. 1628, 1631 (1965). Its "overriding purpose" is to protect the accused from prosecutorial and judicial abuse. *Gannett Co. v. DePasquale*, 443 U.S. 368, 379, 99 S. Ct. 2898, 2905 (1979). But "[t]here is not the slightest suggestion . . . that there is any correlative right in members of the public to insist upon a public trial." *Id.* at 381, 99 S. Ct. at 2906. Shimota does not suggest that anyone she invited to the trial (or anyone else) attempted to attend the trial but was denied access so as to implicate her right to a public trial. And no caselaw suggests that a defendant's right to a public trial is

13

unsatisfied because the only attendees are those who chose to attend in person. Her argument overlooks the fact that "[n]ot all courtroom restrictions implicate a defendant's right to a public trial." *State v. Brown*, 815 N.W.2d 609, 617 (Minn. 2012).

We hold that the district court did not violate Shimota's constitutional right to a public trial by denying her request to video record the trial. The district court therefore did not err in applying Minnesota General Rule of Practice 4.02(c) and denying Shimota's motion.

**III**

Shimota maintains that the district court abused its discretion in instructing the jury on test refusal. The district court has "considerable latitude" in crafting jury instructions. *State v. Gatson*, 801 N.W.2d 134, 147 (Minn. 2011) (quotation omitted). We review the district court's instructions for abuse of discretion. *State v. Koppi*, 798 N.W.2d 358, 361 (Minn. 2011). We see no abuse of discretion here.

Shimota specifically challenges the part of the district court's instruction on the test-refusal charge that addressed the need for the officer to have had probable cause that she was impaired before he required her to submit to a breath test:

> First, a peace officer had probable cause to believe that the defendant drove a motor vehicle while under the influence of alcohol. "Probable cause" requires objective facts. You should evaluate the totality of the circumstances from the view point of a reasonable officer, and you may consider the experience and training of the officer. Probable cause requires an honest and strong suspicion by the officer that the Defendant was driving a motor vehicle while under the influence of alcohol.

Jury instructions are viewed in their entirety to examine whether they fairly and adequately explain the law of the case. *State v. Flores*, 418 N.W.2d 150, 155 (Minn. 1988). And a jury instruction is erroneous if it materially misstates the law. *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn. 2001).

The challenged instruction fairly and accurately explains the law. It sets out the threshold element in the test-refusal statute that a "test may be required of a person when an officer has probable cause to believe the person was driving . . . a motor vehicle" while impaired. Minn. Stat. § 169A.51, subd. 1(b). And as the supreme court recently explained, "[a] properly instructed jury must consider whether the totality of the facts and circumstances would lead a reasonable officer to entertain an honest and strong suspicion that [the defendant] was 'driving . . . a motor vehicle' while impaired." *Koppi*, 798 N.W.2d at 364. The instruction tracks the supreme court's clarification.

Shimota maintains that the instruction redefines the statute to make it unconstitutionally vague and that it prevented the jury from rendering a unanimous verdict. Neither argument succeeds.

We disagree with Shimota's argument that the instruction rendered the test-refusal statute unconstitutionally vague. A statute cannot be enforced if it forbids an act in such vague terms that a person of common intelligence must guess at its meaning. *United States v. Lanier*, 520 U.S. 259, 266, 117 S. Ct. 1219, 1225 (1997). The touchstone of the doctrine is whether the statute "made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.* at 267, 117 S. Ct. at 1225.

15

Shimota argues that, applying the meaning to the statute that the instruction implies, the statute becomes vague because no one can know whether probable cause exists and whether refusing a test would be a crime. This is because probable cause depends on a reasonable officer's perspective, incorporating *the officer's* experience and training—circumstances unknown to the arrestee. But criminal juries commonly must apply a reasonable person standard. They must do so, for example, in reckless driving trials. *See* Minn. Stat. § 169.13, subd. 1(a) (Supp. 2015) ("The risk must be of such a nature and degree that disregard of it constitutes a significant deviation from the standard of conduct that a reasonable person would observe in the situation."). And they must do so when a defendant claims self-defense. *See* 10 *Minnesota Practice*, CRIMJIG 7.05 (2014) (instructing that in defending from an attack "the person may use all force and means that the person reasonably believes to be necessary . . . to prevent an injury"). The supreme court expressed no apparent vagueness concern in *Koppi* when it recognized that probable cause "incorporates the individual characteristics and intuitions of the officer to some extent." 798 N.W.2d at 362. In any event, the reasonableness of the officer's belief depends on an *objective* inquiry "even if reasonableness is evaluated in light of an officer's training and experience." *Id.* at 363. We fail to see how incorporating the officer's experience into the objective standard renders the test-refusal statute vague. And even if it did in some cases, in this case the probable cause finding does not depend on obscure police training or unique experience; the officer based his arrest on well-known indicia of alcohol intoxication: poor driving, the odor of an alcoholic beverage, and extreme uncooperativeness. The test-refusal statute, as characterized by the jury instruction, would

not leave a person of ordinary intelligence to guess about its application. It was clear at the time that Shimota refused the test that her refusal constituted a crime. The district court did not abuse its discretion in wording the instruction.

We also do not agree with Shimota's argument that the instruction creates a unanimity issue because it allows each juror to find probable cause on facts that might have been rejected by other jurors when probable cause depends on the totality of the circumstances. Although all criminal jury verdicts must be unanimous, "the jury need not always decide unanimously which of several possible means the defendant used to commit the offense." *State v. Ihle*, 640 N.W.2d 910, 918 (Minn. 2002). The final determination of probable cause, not the determination of the particular supporting circumstances, constitutes the element that the jury must find unanimously.

**IV**

Shimota contends that the evidence was insufficient for the jury to find her guilty of obstructing legal process. We review the record to determine whether the evidence, taken in the light most favorable to the verdict, is sufficient for a guilty verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We assume that the jury believed the state's witnesses and disbelieved any contrary evidence. *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). We have no difficulty answering Shimota's argument using this standard.

The obstructing-legal-process statute prohibits persons from intentionally obstructing, resisting, or interfering with a peace officer who is performing "official duties." Minn. Stat. § 609.50, subd. 1(2) (2012). Shimota first focuses on the phrase, "official duties." She contends that the state did not present evidence establishing that the

17

arrest that she obstructed was mandatory. "If an arrest is not mandated," she insists, "then it is not a duty." We can reduce her argument to a syllogism: No discretionary acts are official duties; the officer's decision to arrest Shimota for drunk driving was a discretionary act; therefore, the officer's decision to arrest Shimota was not an official duty. The syllogism includes a false premise. Almost all of a police officer's enforcement duties—including virtually all warrantless arrests—are discretionary, so Shimota's "mandatory" requirement would render the statute essentially useless. Anyway, Shimota offers no legal support for the premise, and it is flawed. It is well settled that a defendant cannot prevail on an evidence-insufficiency argument by challenging her conviction based on her claim that she was resisting only an *illegal* arrest. *State v. Wick*, 331 N.W.2d 769, 771 (Minn. 1983). Illegal arrests are never mandatory, of course, and that defeats Shimota's argument: if the state need not prove that the obstructed arrest was *legal*, it need not, *ipso facto*, prove further that the obstructed arrest was *mandatory*.

Shimota also argues that the state failed to prove obstruction because she did not direct her physical resistance at the officers. But the statute does not require proof that the offender directed her force at anyone in particular. As a matter of law, requiring the state to prove that the defendant directed her force at a police officer rather than at an inanimate object would render meaningless the statute's differentiation between obstruction based on an act "accompanied by force or violence or the threat thereof" and obstruction "in all other cases." Minn. Stat. § 609.50, subd. 2(2)–(3) (2012). And as a matter of fact, the trial evidence showed that Shimota indeed directed force toward an officer by grabbing

18

Sergeant Burkhalter's wrist when the officers tried to pull her from her car. The state produced sufficient evidence supporting the obstruction conviction.

## DECISION

Applying the statute's meaning of "immediately" in the context of an arrest, we hold that Minnesota Statutes section 169.91, subdivision 1, did not require the officer to present Shimota to a judge before he completed the implied-consent testing procedure required by section 169A.51. We reject Shimota's argument that she had a Sixth Amendment right to create a video recording of her trial. We also hold that the district court properly instructed the jury on test refusal and that the state presented sufficient evidence to support Shimota's conviction of obstructing legal process.

**Affirmed.**