Coal Creek, etc., Co. v. East Tennessee, etc., Co.

COAL CREEK, ETC., CO. v. EAST TENNESSEE, ETC., CO.[*]

(*Knoxville.*   November  10,  1900.)

1. CORPORATIONS.   *Proof of existence of.*

The certified list of domestic corporations, published with the
session Acts of the Legislature, as required by the general In-
corporation Act of 1875, affords *prima facie* evidence of the
existence and legal incorporation of the corporations named
therein, subject to rebuttal by proof of fatal defects in the
proceedings of incorporation.   (*Post, pp. 564, 565.*)

Acts construed: Acts 1875, Ch. 142, Sec. 20; Acts 1885, Ch. 53.

Code construed: § 2033 (S.); § 1697 (M. & V.).

Cases cited: Brewer *v.* State, 7 Lea, 682; Tillery *v.* State, 10 Lea,
35; Anderson *v.* Railroad, 91 Tenn., 47; State *v.* Missio, *ante,* p.
218.

2. SAME.   *Judicial notice taken of certified list.*

The Courts take judicial notice of the certified list of domestic
corporations published with the session Acts of the Legisla-
ture, pursuant to the general Incorporation Act of 1875, and
no proof of such list is required.   (*Post, p. 565.*)

Act construed: Acts 1875, Ch. 142.

Code construed: § 2033 (S.); § 1697 (M. & V.).

3. WILLS.   *Power of executors.*

An executor's deed, made in confirmation of his testator's deed
lost before registration, is effective to supply the link in the
purchaser's title, when the will confers upon the executor full
power to sell any and all of testator's real estate, declaring a
purpose to clothe the executor with the same power with ref-
erence to the testator's property that he himself would have,
if living.   (*Post, pp. 565, 566.*)

4. LAND LAW.   *Adverse possession within conflicting grants and
tolling title.*

Where three grants of different dates have a common interlap,
and outside of this interlap, and upon an interlap of the elder
and younger grants, adverse possession is held under the

---

[*] Pickle & Turner submitted brief on behalf of complainants, being counsel in
another case involving same question.—REPORTER.

Coal Creek, etc., Co. *v.* East Tennessee, etc., Co.

younger grant claiming to its boundaries, for seven years, the title under the elder grant is extinguished, but not tolled in favor of the younger grant, and the intermediate grant carries title thereafter to the land within the common interlap of the three grants. (*Post, pp. 567–580.*)

Code construed: § 4456 (S.); § 3459 (M. & V.); § 2763 (T. & S.).

Cases cited: Trim *v.* McPherson, 7 Cold., 18; Hopkins *v.* Calloway, 7 Cold., 37; Wallace *v.* Hannum, 1 Hum., 450; McLain *v.* Ferrell, 1 Swan, 54; Railroad *v.* Mabry, 85 Tenn., 47; Belote *v.* White, 2 Head, 712; Nelson *v.* Trigg, 4 Lea, 705; Barnes *v.* Railroad, 2 Leg. Rep., 272 (S. C., 2 Shan. Cases, 15); Garrett *v.* Vaughn, 1 Bax., 116.

---

FROM CAMPBELL.

---

Appeal from Chancery Court of Campbell County. HUGH G. KYLE, Ch.

LUCKY, SANFORD & FOWLER for Coal Creek Consolidated Coal Co.

J. HENDERSON REID and JOUROLMON, WELCKER & HUDSON for East Tennessee Iron & Coal Co.

WILKES, J. This is an ejectment suit. There was a decree in the Court below and an appeal to this Court. Upon hearing in the Court of Chancery Appeals the decree of the Court below was modified, and there was an appeal to this Court by the complainant, and the defendants, Rothchilds *et al.,* have filed the record upon writ of error.

The first feature presented is that the complainant sues as a domestic corporation, but fails to show that it was ever chartered or organized as such.

The fact of complainant's organization appears from the published volumes of statutes of the State. Acts of 1885, page 53. The statute of 1875, Chap. 142, Sec. 20 (Shannon, § 2033), provides for the publication of a certified list of all corporations organized under that Act since the last publication, and that such publication shall be legal evidence of the existence of such corporation. Construing this Act it has been held that such publication is *prima facie* evidence of the existence or legal incorporation of such corporation, but the defendant may show that the charter was not registered as required by law. *Brewer* v. *The State,* 7 Lea, 682; *Tillery* v. *The State,* 10 Lea, 35; *Anderson* v. *The Railroad Co.,* 91 Tenn., 47; *State* v. *Missio, ante,* p. 218.

The Act places this list of domestic corporations on the same status as the published Acts of the Legislature, of which the Courts will take judicial notice, and no proof need be made of the same. Shannon, §§ 5584, 5585, and 5586.

The defendants, Rothchilds and others, assign as error that there was a break in complainant's title, and the Court of Chancery Appeals held that this was cured by a deed from the executors of W. S. McEwen to the complainant as to the undivided half interest of W. S. McEwen. It is found by the Court of Chancery Appeals that McEwen conveyed this interest (through mesne conveyances) until it reached complainant in 1871,

but the deed was lost before registration. Mc-Ewen afterwards died, and his executors, in 1897, made a deed confirming that which had been lost and to supply the same. That Court reports that the executors of McEwen were by his will given full power and control over all the testator's effects whatever, with full power to sell any or all of his real estate, and that there was in the will this clause: "In a word, my intention is just to clothe them with the same power to do any and everything with all the property belonging to my estate that I could do were I alive and managing it myself." The Court of Chancery Appeals was of opinion the will gave the executors the power to confirm this deed which had been made and lost, and in this we think there was no error.

We come next to the question of title upon its merits. The land in controversy is covered by three separate grants from the State. The defendant, East Tennessee Iron & Coal Co., deraign their title to the State under a grant to Eastland and Lane No. 21929, of date January 30, 1838, and this is the oldest grant and the best paper title, and will be referred to as title or grant No. 1. The complainant, Coal Creek Consolidated Coal Co., claim under grant No. 26078 to Wm. Scott, of date January 29, 1848, and this title will be referred to as No. 2. The defendants, Rothchilds and others, claim under a

grant to Hatmaker and another for 500 acres, No. 30450, date October 22, 1860, and this title will be referred to as No. 3. Holders of title No. 3 claim under seven years adverse possession and the statute of limitations, under their assurance of title. The claimants under Nos. 1 and 2 have never had actual possession of any part of the controverted territory. The Chancellor held that grant No. 1 was the oldest and best title, and that the claimant under it was entitled to recover all the land embraced in it except that portion covered by the other two grants, but as to that portion the title under grant No. 1 had been extinguished and barred by the adverse possession under the third grant, and title No. 1 having been extinguished by the adverse possession under title No. 3, title No. 2, being next in point of seniority, was the superior title to the premises in dispute. The adverse possession under the third title was within the boundaries of the first title, but not within those of the second title, and the complainants holding the second title were declared entitled to recover the land embraced within the conflicts of these grants.

The defendants, Rothchilds and others, who own the third title, appealed to this Court. Title No. 1 covers the whole of the land in controversy. Title No. 2 covers only a part of title No. 1, and only part of title No. 3. Just outside the lines of the second title, but inside the lines of

the first title, was the possession of the third title, and there is no question but that the possession continued for more than seven years before this suit brought, under a deed purporting to convey title in fee. The Court of Chancery Appeals report that if the contest was alone between the third and the first title, the former would prevail to the extent of its boundaries; that if the contest was between the second and the first titles, that the latter would prevail, as it is the older, and there has been no possession under either. Also that if the contest was between the second title and the third title, that the former would prevail, as there had been no adverse possession under the latter upon the second title unless the third title having defeated the first title can draw that title to itself and thus defeat the second title. But in this suit complainants claim under the second title, and sue parties holding under both the other titles, one being older without possession, and the other younger but with possession, on the first title but not on the second title. The Court of Chancery Appeals held that the adverse possession under the third title tolled the first title, and vested it in the claimants of the third title. The reasoning of that Court is that there is but one true title, that it vested in the first instance under the older or first title, but when the possession under the third title had continued seven years, the older title was

vested in the claimants of the third title. Hence the complainant had failed to make out its title, and its bill was dismissed. It is insisted on this feature of the case, on one hand, that the Court of Chancery Appeals erred in holding that the first title was "tolled to" and vested in the claimants of the third title, the parties in adverse possession as to the first title but not as to the second title. On the other hand, it is insisted that the conclusion reached by the Court of Chancery Appeals must result from the operation of the statute (Shannon, § 4456), which in substance provides that any person having had seven years adverse possession of any granted lands, holding under an assurance of title purporting to convey an estate in fee, is vested with a good and indefeasible title in fee to the land described in the assurance of title. We are of opinion this contention is not well made, notwithstanding the great array of authority that apparently supports it. We think the correct rule is, that the adverse holding under the color of title has merely the effect to extinguish an older title as to which it is adverse, but does not draw the older title to itself. If not so, the logic of such holding would require that the adverse holder should, in a contest with a third person, set up the older title as a chain in his own, or the beginning and formation of his own. But in order to maintain his title, the party in possession must

hold adversely to the party whose title is to be extinguished, and until he has actual adverse possession as to such party the statute of limitations does not run against such party. When the statute says that the adverse holder acquires a good and indefeasible title, it means that such title is indefeasible by any one as to whom the holding has been adverse. The adverse holding does not vest the title of the first holder in the adverse claimant, but extinguishes it, and the adverse title does not rest upon the title it has defeated, but upon its own assurance and holding thereunder. It will not do to say that this language means that the adverse possession tolls and brings to its support the superior title and vests an indefeasible estate in the possessor, and the whole matter in controversy is whether, in case of adverse possession under a junior title, the superior title is kept alive and brought to the support of the adverse title, or whether it must be treated as extinguished or abandoned. The theory of the law is not that the superior title is kept alive and brought to the support of the party in possession, but it is that it is extinguished as if it had been abandoned, or had never existed. We think the Act lends no color to the idea that the title defeated is tolled and brought to the relief of the title which defeats it, as against an intervening title; but, on the contrary, it is extinguished, and the adverse claimant holds the

property under his own title, and must rest on that alone. It is conceded that a barred or extinguished title cannot be set up to defeat an action of ejectment, and it is sought to escape this rule by the proposition that while the title is extinguished in the original owner, it vests in the adverse holder. It is said that there can be but one true title, but this, we think, proves nothing except that the property will remain wherever in the conflict of title it should belong, and where the better title appears to rest. We are aware that there are a large number of cases using expressions which seem to hold that the older title is tolled and brought to the relief of the adverse holder. The doctrine as laid down in 1 A. & E. Enc. Law (2 Ed.), 883, is in these words: "By the adverse possession of land for the statutory period of limitation, the adverse holder acquires the title in fee simple, which is as perfect as a title by deed. Its legal effect is not only to bar the remedy of the owner of the paper title, but to divest his estate and vest it in the party holding adversely for the required period of time, so that he may maintain an action of ejectment for the recovery of the land even against the holder of said paper title who has ousted him. In support of this text a large number of cases are cited from the Supreme Court of the United States and from the Supreme Courts of Alabama, Arkansas, California, Connecticut,

Florida, Georgia, Illinois, Indiana, Iowa, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New Hampshire, New Mexico, New York, North Carolina, Ohio, Oregon, Pennsylvania, South Carolina, Texas, Vermont, and Wisconsin. Tennessee is also embraced in this list of States thus holding.

We have not access to all the reports and cases cited, but it is fair to assume that the substance and holding of the cases is properly stated. It will be noticed that this text does not say that the effect of the adverse holding is to divest the paper title and vest it in the party holding adversely, but to divest the estate. In other words, the adverse holder becomes entitled to the property, but he acquires it not by drawing the paper title to himself, but by extinguishing such paper title and establishing another title on his assurance or color, coupled with his adverse possession.

In *Walerhouse* v. *Martin,* Peck, 392 and 456, it is said that not only the right of possession is barred under our statute of limitations, but the right of property also, and the adverse possessor acquires what his adversary loses. But this means that he acquires the property which his adversary loses, not that he acquires it by his adversary's title, but by his own title.

In *Trim* v. *McPherson,* 7 Cold., 18, the Court uses the language, "the title to the property will be regarded as vested in the possessor," but this

does not mean the title which the original owner had, but that the adverse holding vests the holder with the title to the property under his own assurance coupled with the possession.

In *Hopkins* v. *Calloway,* 7 Cold., 37, it is held that under the first section of the Act of 1819 an adverse possession of seven years under an assurance of title purporting to convey the fee, not only bars the remedy of the party out of possession, but vests the possessor with the absolute estate in fee simple. But this language must be taken to be a general expression, and not an absolute holding under all contingencies. It is evident the adverse possession does not vest a fee simple estate as against married women, infants, and persons under disability except under the saving provisions of the statute nor against any person as to whom the holding was not adverse. Such persons had no right of action, they could not sue in their own names; as to them the statute did not run.

We think this is the extent of the holding and the real decision in the cases of *Wallace* v. *Hunnum,* 1 Hum., 450; *McLain* v. *Ferrell,* 1 Swan, 54; *Railroad Co.* v. *Mabry,* 1 Pick., 47; *Belote* v. *White,* 2 Head, 712; *Nelson* v. *Trigg,* 4 Lea, 705, 706; *Barnes* v. *Railroad,* 2 Leg. Rep., 272 (S. C., 2 Shannon's cases, 15); and also the large number of cases holding a similar doctrine as to personal property. See *Garrett* v.

*Vaughn,* 1 Bax., 116, where many of them are cited and collated, and the same may be said of the text and cases cited in 1 Enc. of Law (2 Ed.), 874, and 13 Enc. of Law (original Ed.), 693-697.

It is true that the title acquired by the adverse holder may be as effectual for remedies and defenses as title acquired in any other manner, as is held in *Greer* v. *Course,* 24 Am. St. Rep., 438; *Norment* v. *Eureka Co.,* 39 Am. St. Rep., 45, and note page 54; *Myers* v. *McGavock,* 42 Am. St. Rep., 630, note page 649; *Cannon* v. *Stocman,* 95 Am. Dec., 205, note page 209; 3 Washburn on Real Property, 163-165.

The latter authority says: "The statute takes away the title of the real owner and transfers it, not in form indeed, but in legal effect, to the adverse occupant. In other words, the statute of limitations gives a perfect title." But it is evident the learned author was but emphasizing the fact that the statute did not merely take away the remedy, but also vested the estate under the new title. This we think means that whereas before the original owner had a fee simple title, now the adverse holder has it. Not the title of the original owner, for that was extinguished, but the title built upon the paper assurance of the adverse possessor coupled with his adverse possession. It must be admitted the language is broad enough to admit the contrary construction, but it

Coal Creek, etc., Co. *v.* East Tennessee, etc., Co.

also admits of the construction we give it, which is in our opinion the most reasonable and rational. But the author was merely considering the status of the adverse possessor against the party to whom the possession was adverse, and not as to an intermediate title as to which there had been no adverse possession. That the adverse possessor holds under his own assurance of title, and not that of the original owner, is manifest from the language of the statute, which says that he is vested with a good and indefeasible title in fee to the land described in his assurance of title. We think the view we have taken of this question is borne out, strengthened, and sustained by the second clause of the Act of 1819, Chapter 28 (Shannon, § 4457), which uses this language: "And, on the other hand, any person, and those claiming under him, neglecting for the term of seven years to avail themselves of the benefits of any title, legal or equitable, by action at law or in equity effectually prosecuted against the party in possession under (recorded) assurance of title, as in the foregoing section, are forever barred." This clearly contemplates a party in possession holding adversely to the claimant, who has a right to sue. But that right to sue does not accrue except when there is a party in adverse possession to the claimant who is to be barred, and until that accrues the statute does not begin to run.

Coal Creek, etc., Co. v. East Tennessee, etc., Co.

nor the bar begin to be formed as to such claimant.

We have not seen proper to refer to the Kentucky cases in this discussion, because we think the statute of Kentucky is materially different from our own, inasmuch as it declares in express terms that the adverse possession shall bar and toll the right of entry into such land by any person under an adverse claim or title, and such possession as will bar the right to recover the same shall vest the title in the occupant or his vendee. General Statutes of Kentucky, 1879, Sec. 1, p. 627. This language may be construed that the title of the original owner shall be tolled and vested in the adverse holder, but it is quite different from the language of our statute.

This Court has had occasion to know the system of issuing grants by the State, under which multiple grants have been issued to the same lands. It has been a fruitful source of litigation in the Courts, and this Court judicially knows that from the beginning of its history the State has issued two or more grants to the same land, thus giving under the sanction of the State claims of title to the same lands to various parties, and the Court is continually called upon to pass upon these conflicting titles and determine which is the better, until quite a system of land laws more or less arbitrary have been built up in order to quiet titles. We think that as one of these rules

it has grown to be a fundamental principle that the oldest title shall prevail, other things being equal, and when the oldest title is extinguished or abandoned, the one next in seniority should be best unless the fact of adverse possession exist as to the secondary as well as the primary title, so that when the title under the first was extinguished as to land by the adverse possession under the third title, the title under the second grant became the oldest and best title, and must prevail unless the possession under the younger or third grant was adverse as to it also, which it was not, the possession under the third grant not being upon the lands embraced in the boundaries of the second grant. We append a map of the

premises to show as well as we can the relative relations of the three grants and the portions cov-

ered by actual possession.   A  B  C  D  represents the property in controversy.

It is said. there can be but one true title, and this is true if the term true title is used as synonymous with superior title.   But there may be many grants purporting to convey a fee simple title to the same land, and such is the case whenever there is a conflict of grants.   Each purports to be a fee simple title, and for practical purposes may be so regarded so long as it is not brought into contest with a superior title purporting to convey a fee.   The contest decides which is the superior title while each purports to be in fee.   The terms "true titles" and "titles in fee simple" have been used in our books to distinguish between the character of titles acquired under the Act of 1819 and those acquired by adverse possession before that Act, the title in the one case being vested in the adverse holder while in the other he simply has a right of possession only.   But no title can with propriety be said to ever become the true title until its superiority to all other titles is either conceded or established after contest.

While we have not had the time to read closely all the cases cited, we are aware of none of them presenting the exact question here involved— that is, the right of an intervening or intermediate title as against a title acquired by a

holding adverse to the superior title but not as to the intervening title.

We are of opinion that a claimant under title with adverse possession as against the holder of one title cannot *ipso facto* acquire a superior title as against other claimants having title in themselves, and as to whom he has never been in adverse possession. To make his title superior to all other titles, the party must have a possession that is adverse to all other titles, and he only obtains a true title when he holds adversely for the required time against all titles superior to his own.

We will suppose the attitude of these parties to be reversed, and that the suit is brought by the claimants of the third title to establish it as against claimant under both the first and second grants. They would have to support their action first by a grant from the State for the land, next an assurance of title under the conveyance to them, and, third, a possession on the premises. Now, as to the claimants under the first grant, they could succeed because they have an assurance of title and adverse possession within the interlap, but as to the second grant claimants they should not succeed, because, while their assurance of title covers lands within the second grant, there is no possession on the interlap between the boundaries of the second and third titles. The theory upon which they would recover against the first

---

---

title is that having possession adverse to it the claimants under the first grant must be held to have abandoned their title to the extent claimed by the third title, but there is no such presumption as to the second title, because there has been no possession upon it adverse to it and calling for a suit, and no presumption of abandonment can arise. While, therefore, in this aspect of the case, the third could bar out the first title by the adverse possession, they cannot bar the second title, for they have had no adverse possession as to it.

We are of opinion, therefore, that the Court of Chancery Appeals is in error; that the holders under the third grant have never drawn to themselves the first title, and do not hold under it, but that is extinguished as to the land embraced in the boundaries of the third grant, but that so much of the land embraced in the third grant boundaries as lies within the second grant must be held to pass under that grant, the second, to complainant, the first title having been extinguished and virtually abandoned. This of course only extends to the interlap between the second and third grants and no further.

The costs of this Court will be paid by the Rothchilds, or parties claiming under the third. grant; the costs of the Court below as adjudged by the Chancellor.