## A. W. KELLEY v. TENN. ELECTRIC POWER COMPANY.

Western Section. February 11, 1928.

Petition for Certiorari denied by Supreme Court, June 16, 1928.

Carlyle S. Littleton, of Chattanooga, for plaintiff in error.
Shepherd & Carden, of Chattanooga, for defendant in error.

HEISKELL, J.   This is a suit for damages brought by A. W. Kelley as administrator of his minor son, Arthur W. Kelley, for the death of said son, alleged to have been caused by the negligence and wrongful conduct of the defendant.   After all the evidence was heard the court directed the jury to return a verdict for the defendant, and the plaintiff has appealed.   The first error assigned is that it was wrong to take the case from the jury.   Then followed several assignments based upon the exclusion of testimony offered.

The Tennessee Electric Power Company had erected and maintained, at the time alleged in the declaration in this case, a line of steel or metal towers from its power plant at the lock and dam on the Tennessee River to the City of Chattanooga, which supported wires over which it transmitted electricity of high voltage.

One of these transmission towers was located in an open field behind and a short distance from a church at the intersection of Wauhatchie Pike and the Kelley's Ferry Road, in Hamilton county, Tennessee, and a short distance from the home plaintiff then rented and in which he lived, and in which his said son likewise lived.

On one corner of said tower were attached steel spikes or projections from the steel pieces forming one of the upright corners of said tower, placed thereon for the purpose of forming a ladder upon said tower.   Said spikes, together with the braces forming said tower, form a continual ladder from a point a short distance above the ground to the top of said tower.

The defendant company had acquired a right of way 150 feet wide for the purpose of constructing said line. The tower in question was located in a farm field used for pasture purposes and enclosed by a fence. The location was about three and a half miles from the city limits of Chattanooga. The tower was about 400 feet from plaintiff's home and may be a little farther from the church referred to.

The deceased lacked one month of being eleven (11) years of age; was a bright, strong, healthy boy, in the third or fourth grade at school; had never been told by his father of the dangers of electric wires; had never, so far as his father knew, played around this tower, nor had the father seen any other children playing there.

On the Sunday upon which the boy met his death he and his companions had been playing at the Wauhatchie church, about 400 feet from the tower in question. They decided that they would go over to the house of Mr. Walter Cummings, which lay across the bottom, some distance away. Instead of choosing to go by the road, they climbed the fence, walked down into and through the pasture in which the tower in question was located, passed it, and went on to the Cummings home. The party consisted of Johnnie Brackett, fifteen years of age at the time of the trial, and older than the Kelley boy; Johnnie Chambers, twelve years of age at the time of the trial, and younger than the Kelley boy. Upon their return trip, which was again across the fence and through the pasture near the tower, Johnnie Brackett climbed up a little ways, and then the Kelley boy climbed up further, and reached the lower wires, more than thirty feet above the ground, one of which he either touched or got so close to that he was electrocuted. Johnnie Brackett had never played there before, and states that it was not the custom for boys who attended that church and Sunday School to play around that tower. Johnnie Chambers states the same thing. Both boys stated that it was not the tower which attracted them into the pasture, but that it was their desire to go through the pasture to the Cummings home, which accounted for their presence therein.

According to the brief for plaintiff this line of towers was constructed in 1914. There is no proof that boys ever played around or climbed the tower in question, except the testimony of J. M. Keith, who says he climbed this and practically all the other towers from the time he was nine or ten years. He was twenty-nine when he testified, and if he climbed this tower before he was fifteen, he climbed it some years before it was built. There is little, if any, proof tending to show any climbing of this tower during recent years, and no proof to show that children played around it.

The brief for plaintiff says the case is before this court on the question of whether this transmission tower was an attractive nuisance, and whether the question of the Company's negligence was one that should have gone to the jury under appropriate instructions.

It is conceded, on behalf of the plaintiff, that unless the doctrine of attractive nuisance applies in this case, the trial court was not in error in taking the case from the jury.

Plaintiff, by proof, introduced and by that offered and excluded by the court, sought to show that the defendant, in order to avoid the charge of negligence, should have eliminated all pegs or steps lower than six or eight feet from the ground; should have fenced the base of the tower; should have placed arms at top, supporting wires, our of reach; should have insulated wires and have put up signs giving warning of danger. This is, of course, on the theory that the doctrine of attractive nuisance applies. There is no dispute as to the danger of fatal shock from these wires, even without actual contact, if a hand, for instance, comes within a few inches of one.

The contention for defendant is that the plaintiff has failed to make out a case under the theory of attractive nuisance.

The argument becomes a duel of authorities. We cannot attempt to discuss all the cases cited, but will endeavor to classify them in order to show where the line of distinction falls as to what is and what is not an attractive nuisance.

The cases can be divided into two general classes. (1) Those dealing with dangerous instrumentalities in public places. (2) Those in which the attractive instrumentality is located entirely upon private property. This second class of cases may be divided into those (a) in which the private property is used by permission of owner as if public. (b) Where the attractive instrumentality is so located on private property as to constitute a temptation or lure to children to trespass on said property. (c) All other cases of more or less dangerous instrumentalities on private property.

This tower was located on private property as fully as is possible in the case of an instrumentality of this sort erected and operated by a public service corporation. The defendant owns a right of way 150 feet wide. This is all it could do in the way of acquiring private property upon which to erect this tower. We may therefore lay aside all cases in which the attractive instrumentality was located in a public place where children passed or congregated as a matter of right of custom.

This tower was on the right of way of defendant in a fenced pasture. Something is said about a gap in the fence, but the boys had to go over or through a fence on both sides of the field, in

going over to the Cummings house. The ground around this tower was not used by children as a play ground, or in any wise. There was no road nearer than four hundred (400) feet or more. It was not therefore located upon private property, all trespass upon which had been waived by consent, or condonation, and we need not consider this class of cases. All that remains to consider is does this case fall within the class of which our case of Whirley v. Whiteman, 38 Tenn., 610, is a type.

We start out with the rule that a landowner owes no duty to a trespasser on his land, except not to wilfully injure him. The doctrine of attractive nuisance is in derogation of this rule of law.

No better short definition of the doctrine of attractive nuisance can be given than that pronounced by the Supreme Court of the United States in the case of United Zinc & Chemical Co. v. Britt, 258 U. S., 268, 66 L. Ed., 615, 42 Supreme Court Reporter, 299 (March 27, 1922), and later quoted with approval by the same court in the case of New York, New Haven & Hartford Railroad Co. v. David Fruchter, 260 U. S., 141, 173, L. Ed., —, to-wit:

"Infants have no greater right to go upon other people's land than adults, and the mere fact that they are infants imposes no duty upon the land owners to expect them and to prepare for their safety. On the other hand, the duty of one who invites another upon his land not to lead him into a trap is well settled; and while it is very plain that temptation is not invitation, it may be held that knowingly to establish and expose, unfenced, to children of an age when they follow a bait as mechanically as a fish, something that is certain to attract them, has the legal effect of an invitation to them, although not to an adult. There can be no general duty on the part of a land owner to keep his land safe for children, or even free from hidden dangers, if he has not directly or by implication invited or licensed them to come there."

Whirley v. Whiteman, 38 Tenn., 610, is about as different as a case can be from the present case. That was a case of cog-wheels exposed near the ground, within twenty feet of street, where children were accustomed to be, and a child three years old was injured.

The turntable cases are also in a class by themselves and cannot assist the plaintiff in the present case.

Next we have Cooper v. Overton, 102 Tenn., 211, in which the court holds that a pond on an unfenced lot, owned by the defendant, in a thickly settled neighborhood and close to where school children play, is not an attractive nuisance.

This was followed in Benson v. Howard Brick Co., 6 Higgins, 497.

In Doyle v. Chattanooga, 128 Tenn., 433, the city was held liable for death of children drowned in a pond in a public street. There is little to distinguish this case from the Overton case, except the difference between public and private property.

The last case to come before the Tennessee courts on this subject is T. Clark Smith v. Southern Railway Co., now pending argument in the Supreme Court upon certiorari. The case came before the Court of Appeals, upon appeal of plaintiff from a directed verdict in favor of defendant. The court held a gravel pile on a railroad switch, at a station, an attractive nuisance to a six-year-old child and reversed the case. Certiorari was denied by the Supreme Court. On the second trial the plaintiff recovered a verdict and the railway appealed. The judgment was affirmed in Court of Appeals, petition for certiorari granted and the case set down for argument, but has not yet been argued. If the case is affirmed it does not help the plaintiff in the present case. The pile of gravel was on a switch at a station where a much-traveled hard surface road ran on one side of the right of way, and on the other was a wide passage used by pedestrians, and children were accustomed to play upon the gravel pile.

It was left steep. A train backed on the switch, caused it to slide down, throwing a six-year-old child under the wheels of the train and cutting off his leg. It was pressed upon the Court of Appeals in the last hearing that the pile was on private property of the defendant, and therefore defendant liable for wilful injury only. But the court held that the location was much more like a public place than ordinary private property, aside from the gravel pile being in plain and near view from the front yard of the home of plaintiff. Abundant authority was found holding sand and gravel piles under similar circumstances to be attractive nuisances. Assuming this case to be affirmed by the Supreme Court, it is so clearly distinguished from the present case as to give no comfort to the plaintiff herein.

A number of cases are cited to support the contention of plaintiff, but without attempting to follow them in detail they are for the most part, at least, cases clearly eliminated as authority by the classification before made. For instance, Sioux City & P. Railroad v. Stout, 17 Wall, 657, 21 L. Ed., 745, was a turntable case, and Robertson v. Rockland L. & P. Co., 176 N. Y. S., 282, was a case of a pole in a public street and in close proximity to a school for boys. The pole had steps coming down close to the ground. The court said:

"We think there is a material difference between trespassing upon private premises and using private property left unguarded and unattended either temporarily or permanently in a public highway."

There are cases even where the instrumentality is in a public place, in which the court denies the application of the doctrine.

David Frutcher v. N. Y., N. H. & Hartford R. R. Co., supra, the last pronouncement by the Supreme Court of the United States on this subject, is a typical example of the latter class of cases. In that case the facts were as follows:

149th street in New York was carried over and across the tracks of the Railroad Company by a public municipal steel truss bridge of standard construction. The bridge was fifty-four feet wide, 270 feet long, and was formed of posts, beams, girders, etc., connected by trellis or lattice work. The top girders or beams were twenty-three feet above the street. The law imposed upon the Railroad Company the duty of maintaining the frame work. Fastened to the top girder, at the end of the bridge, were two upright steel lattice towers, posts, or struts, to which cross-arms were attached six feet above their bases, supporting electric wires. The nearest wire was nineteen inches from the strut. A boy aged eight years climbed from the street to the top of the bridge in quest of a bird's nest. He saw the bird on the wire above and climbed up the strut and reached out to catch it. He came in contact with the wire and was seriously injured. His father sued to recover. The Supreme Court of the United States said:

"Considering the peculiar circumstances of the cause, it is clear that, if plaintiff had been an adult, he could not recover; and we are unable to find sufficient evidence from which the jury could have properly concluded that the Railroad Company, either directly or by implication, invited or licensed him to climb upon the strut to a point from which he could touch the wire, thirty feet above the street. The motion for an instructed verdict should have been granted."

A stronger case than the present for the application of the doctrine was Bonneell v. Milwaukee Light, Heat & Traction Company, 182 N. W., 468. The court in that case held that where boys played in a field containing steel towers bearing electric wires, to the knowledge of the owner, but had never climbed the towers beyond the first cross-bars, and the owner's employees had never seen them on the tower, a boy climbing one of the towers to the height of thirty (30) feet and circling it on the narrow bars, was a trespasser, and the owner owed him no active duty to protect him, whether or not he was a licensee, while playing at the foot of the tower.

It is true the boy in this case had been warned of the danger, and the court treats this under the head of contributory negligence, but aside from that says:

"We hold that the defendant was not bound to anticipate that a child or children would climb the tower in such a man-

ner as to be endangered by its wires, and that the question of the negligence of defendant should not have been submitted to the jury.''

In Heller v. N. Y. & N. H. & Hartford R. R. Co., 265 Fed., 192, the United States Court of Appeals held that a railroad company which maintained an electric feed wire along side its track twenty-nine (29) inches from an abutment where it passed under a highway bridge twenty-two (22) feet above the track, was not liable for the death of a ten-year-old boy who climbed on the abutment and through an opening in the wire screen above it, touched the wire with a tin can, there being no reasonable ground to anticipate such action.

The Supreme Court of Kentucky in Mayfield Water & Light Co. v. Webb, 111 S. W., 712, held:

''Where electric line wires are put upon poles and placed eighteen feet above the street, the owner need not anticipate that children will reach such wires by climbing the poles or walking upon guy wires which extend from the top of the pole to the ground at an angle of forty-five degrees.''

In Maryland it was held in State v. Chesapeake & Potomac Water Co., 91 Atlantic, 149, 123 Maryland, 120, 52 L. R. A. (N. S.), 1170, that where decedent climbed an electric light pole to rescue a kitten, and while on the pole came in contact with defective insulated wires and received a shock which resulted in his death, that the pole was equipped with spikes to facilitate the ascent did not render him an invitee, but he was at most a licensee to whom the defendant owed only the duty of not to wilfully expose him to risk of injury.

In Simonton v. Electric Light Co., 28 Texas Civ. App., 374, 67 S. W., 530, the defendant had placed spikes in its poles for the use of its men. Children got to climbing the pole and one of them fell and the Company was held not liable.

However, it may be admitted that many cases can be found holding that a high degree of care must be exercised in transmitting electricity through populous communities, and where an ordinarily prudent person would anticipate that persons in the exercise of their lawful rights might be brought in contact with charged wires, and especially that children might be injured; but we think all such cases are easily distinguished from the present case.

There is another Tennessee case which deserves notice in this connection. It is the case of Railroad Co. v. Ray, 124 Tenn., 22. In that case, some boys were attracted by a steamboat which was being unloaded at the wharf. They made their way down to the landing to view the operations, but were not permitted to do so from the boat or wharf; whereupon they climbed upon a box car

upon a spur track, in order to have a more advantageous position from which to view the operations. In this position they heard a noise, as if the cars were about to move, and in jumping to the ground one of the boys broke his leg. Held that the doctrine of the turntable cases had no application, since the plaintiff was not attracted to the place by the cars, but by the unloading of the steamboat.

In that case the court refused a peremptory instruction for defendant and the Court of Civil Appeals granted the instructions and dismissed the suit.

In the present case the two boys who accompanied the boy who was killed say that they did not enter this field, or enter upon the right of way of defendant by reason of the attraction of the tower, but merely to go across the pasture to the Cummings residence. This Ray case brings us to the distinction that covers the present case, from a somewhat different point of view, in that the court finds the attraction of the car was not the motive for the trespass. The rule is, where the dangerous instrumentality is located upon private property, in order that the owner may be liable under this doctrine the instrumentality must be so attractive to the child as to amount to not only a temptation but an invitation to trespass on the private property, thus estopping the owner to plead his nonliability as to a trespasser. Our attention has been called to no case in which it is held that the owner is liable, where the attractiveness of the nuisance did not cause the trespass.

In the case of Doyle v. Chattanooga, we find in the opinion a significant passage. It is this:

"We need only observe that we have not in the case in hand an attractive nuisance on private premises. However, the courts that deny liability in turntable cases do so on the ground that under common-law principles, as construed by them, the attractiveness of the instrumentality or object causing the injury cannot be construed into or as the equivalent of an invitation to a child, on the part of the owner of the premises, and that, without an invitation, express or implied, no duty of active care arises even in respect of a child of tender years going on the premises."

There is no evidence in this record that the tower was the attraction which invited these boys to trespass on this property. On the contrary, the plaintiff's own evidence, by the testimony of the best witnesses available, shows the contrary. Besides there is nothing in the situation shown to give the defendant any reason to apprehend such a contingency as happened.

Usually it is a matter of inference for the court or jury as to whether or not the proof warrants the presumption that the child

was invited to trespass by the attraction of the dangerous instrumentality, but in the present case there is express proof introduced by the plaintiff that the attraction of the tower did not cause the trespass.

The view we take of this case makes it unnecessary to notice the other assignments of error. If all the excluded testimony had been admitted it would not change the result. It would only go to show that the defendant might have taken certain precautions which it was under no obligation to adopt.

All assignments of error are overruled and the judgment of the lower court is affirmed. The plaintiff and surety on appeal bond will pay costs of appeal.

Owen and Senter, JJ., concur.