ANDERSON v. PETERS et al.—124 S. W. (2d) 717.

Middle Section. July 23, 1938.

Petition for Certiorari Denied by Supreme Court, February 4, 1939.

Ward R. Case, of Jamestown, Holladay & Clark, of Cookeville, and Trabue, Hume & Armistead and H. T. Finley, all of Nashville, for plaintiffs in error.

W. A. Garrett, of Jamestown, and S. J. Hamby, of Crossville, for defendants in error.

FELTS, J. This is an action for the wrongful death of his son by C. G. Anderson, Administrator, against Henry Peters, the Tennessee Central Railway Company, the Ayer & Lord Tie Company and the Wood Preserving Corporation. As to the first two named defendants he took a non-suit, and obtained a verdict and judgment against the other two for $10,000. They appealed in error and have assigned errors.

The Ayer & Lord Tie Company and the Wood Preserving Corporation delivered some crossties in the town of Wilder for sale to the Tennessee Railway Company. The ties were piled near a switch-

track for the purpose of being loaded on the railroad cars. Within a couple of days, and before the ties were shipped, plaintiff's son, six years of age, was killed by a tie falling upon him.

The gist of plaintiff's declaration was that defendants were guilty of negligence in that they piled the ties in an unsafe and dangerous manner; that such piles were an "attractive nuisance;" and that plaintiff's son was attracted to one of the piles, climbed upon it, and the ties toppled, and he and two of the ties fell, one of them falling under him and the other upon him, causing his death. The defendants pleaded the general issue.

The only evidence was that adduced by plaintiff. Defendants offered no proof, but stood upon their motions for a directed verdict. These motions, as to the two defendants now before us, were overruled and the cause submitted to the jury, with the result above stated.

The evidence, taken most strongly in plaintiff's favor, tended to prove these facts:

Wilder is a mining town, where the Fentress Coal & Coke Company has its office. There are several residences, a store, a post office, a church, and a school. The Tennessee Central Railroad and the Jamestown-Davidson Highway run through the town. The course of both the railroad and the highway is a curve in a general east to west direction. The railroad and the highway are roughly parallel, and are about 150 feet apart.

Three residences front on the south side of the railroad. They are about 100 feet from the track. Plaintiff's house is the middle one of these three. Between his house and the railroad there is an old or abandoned road, which seems to have been the road used before the highway was built; but this old road is still open. About 10 or 12 feet north of the main line of the railroad is a side-track, which connects with the main line by a switch, located about 100 feet west of plaintiff's house. From this switch the side-track extends east alongside the main line for 600 or 700 feet to a warehouse. The ties were brought in by trucks and piled just north of this side-track at a point about opposite plaintiff's house. Near this point there had formerly been a freight depot. There were four piles of ties, three of them were close together so that there was just about room for a person to walk between them. The accident happened at the middle pile of these three. There was a fourth pile about 30 or 40 feet west of these three piles and about 15 or 20 feet north of the side-track. This fourth pile was thrown off here because the truck bringing them in got stuck and had to be unloaded. The three piles of ties were so placed that their south edge was about 7 feet north of the north rail of the side-track, which was the proper distance for loading them on the railroad cars. The middle pile at which the accident happened was about 110 feet north of plaintiff's house, and there were

between the house and this pile the old road, the main line, and the switch track. There do not appear to have been any fences in the neighborhood.

On the north side of the switch-track, and between it and the highway, there is a vacant strip of ground about 150 feet wide. This ground is rough and generally sloping from the highway toward the railroad, but a part of it had been levelled off for a tennis or basketball court. This court was about 50 feet wide and about 82 feet long. Its north edge was about 40 feet south of the highway and its south edge was about 60 feet from the switchtrack and 53 feet from the three piles of ties. The highway is upon an embankment about 12 or 15 feet above this vacant property. There were some wooden steps leading down this embankment from the highway to this vacant property.

The land on both sides of the railroad, that where plaintiff's house is located and also this vacant property between the railroad and the highway, belonged to the Fentress Coal & Coke Company. Plaintiff was an employee of that company, working in its store. In going from his home to his work he would walk from his house across the old road on to the railroad and then either down the railroad or across this vacant property. There was a path from his house across the road, the railroad, and on to this vacant property; but it was not a "well defined path." The school house was located upon a hill about 300 feet north of the highway and about 450 feet north of the railroad. There was not much room there for the children to play; and there was evidence that they often played on the tennis or basketball court, and the smaller children generally played all over this vacant property between the railroad and the highway; but it does not appear that defendants or any of their agents or employees had any knowledge of this fact, or saw or observed any path from plaintiff's house across the railroad to this vacant property.

There was evidence that the ties were loosely and insecurely piled so that they would easily topple or fall. Some photographs sent up with the record show how the ties were piled. Each pile was made by placing two ties on the ground about 5 feet apart in a north and south direction (perpendicular to the side-track) and putting a layer of ties on top of them in an east to west direction. No ties were put crosswise on this layer, but the ties were piled layer on layer until they were about 5 or 5½ feet high.

The accident happened shortly after noon on October 30, 1935. Plaintiff's son, being only six years of age, had not been attending school regularly, and was not at school that day. Plaintiff came home for lunch and returned to his work about 1 o'clock leaving his son at home. About 45 minutes later he was notified of the accident. There was no eyewitness as to how the accident occurred; and the

cause and manner of the little boy's death are matters of inference from the circumstantial evidence. His body was found a foot or two north of the middle pile of ties, with one tie under him and another upon his back and shoulders, and it appeared that one or both of these ties had fallen from this pile. His chest was crushed and his spine broken.

Defendants insist that the only ground of liability pleaded in the declaration is the "attractive nuisance theory;" that there was no evidence to sustain this theory; and that a verdict should have been directed for them. The plaintiff contends that the declaration states two grounds of liability, one a "common law action for negligence," and the other "upon the attractive nuisance doctrine;" that the place where the ties were piled was unenclosed land of the Fentress Coal & Coke Company, which was used by children as a playground and by the company's employees as a walkway; that defendants in putting the ties there were trespassers; and that on this account and on account of the unsafe and dangerous manner in which they piled the ties they are liable under both theories.

It is true that some of the witnesses testified generally that the land between the railroad and the highway belonged to the coal company; but no one attempted to locate the boundary line between the railroad right-of-way and the coal company's land. It is not disputed that the pile of ties here involved was as near the sidetrack as it could have been placed for properly loading them on the railroad cars. The south edge of this pile was 7 feet from the side-track, which plaintiff's witness, the railroad's section foreman, testified without contradiction was the proper loading distance. The north edge of this pile extended back from the side-track only about 15 or 16 feet. Railroads in this state usually have a right-of-way "not exceeding 200 feet" in width, Code, Sec. 4003; and it is a matter of which we may take notice without proof that this railroad was originally chartered under Acts of 1875, Ch. 142, giving it power to acquire such a right-of-way. Acts 1899, p. 1308; Coal Creek etc., Co. v. East Tennessee etc., Co., 105 Tenn., 563, 59 S. W., 634; Compare Tennessee Railroad Co. v. Campbell, 109 Tenn., 655, 663, 73 S. W., 112; Southern Ry. Co. v. Moore, 7 Tenn. App., 319, 322, 323. So we think we are bound to presume that if the railroad, pursuant to this power given it by statute, did not acquire an easement in the adjacent land for its right-of-way of this extent, it did at least acquire one of such extent as to enable it and persons dealing with it to load and unload freight at this point where it established a freight depot, without being guilty of trespassing upon the rights of the adjacent land owner. Defendants delivered the ties upon the railroad's right-of-way, pursuant to an agreement for a sale of them to the railroad. In doing this they were invitees and not trespassers; and we think they

had all the rights there that the railroad had, and that the question of their liability to the plaintiff must depend upon the same considerations as would that of the railroad company.

■ These considerations are the rights of an owner or occupier of premises to use them in any manner he sees fit, subject to his duty to exercise ordinary care to make them reasonably safe for other persons who may come thereon by his invitation. He owes no such duty to persons who come without invitation or whose presence could not be reasonably anticipated. As there was no evidence tending to show that defendants had any knowledge that children were accustomed to play on or near the railroad premises, they can not be held bound to anticipate that plaintiff's son might come there, unless it can be said that the piles of ties were an attraction they were bound to anticipate might bring him there. We do not think they owed him any duty or could incur any liability upon any other ground. Otherwise stated, we think if defendants may be held liable, it is only upon the "attractive nuisance doctrine."

■ To call the thing from which the injury results an "attractive nuisance" does not solve the question. New York, N. H. & H. R. v. Fruchter, 2 Cir., 271 F., 419, reversed upon another ground in 260 U. S., 141, 43 S. Ct., 38, 67 L. Ed., 173.; see, also, Landowners' Liability to Children, by Jeremiah Smith, 11 Harvard Law Review, 349, 434, reprinted in Selected Essays on the Law of Torts. The test is whether defendants were guilty of negligence, i. e., whether the piles of ties were a dangerous and attractive instrumentality which an ordinarily prudent person would foresee would probably attract children of tender years and probably be a source of danger to them. Otherwise there could arise no duty upon defendants to take precautions or exercise care to prevent plaintiff's son from coming upon the premises or to protect him after he came. Hardy v. Missouri Pacific Railroad Co., 8 Cir., 266 F., 860, 36 A. L. R., 1, 5; United Zinc & Chemical Co. v. Britt, 258 U. S., 268, 42 S. Ct., 299, 66 L. Ed., 615, 36 A. L. R., 28, 31; Annotation, 36 A. L. R., 34, 292, 294.

■ This thought runs through all our cases, both those affirming, and those denying, liability under the attractive nuisance doctrine. Whirley v. Whiteman, 38 Tenn. (1 Head.), 610; Bates v. Railway Co., 90 Tenn., 36, 15 S. W., 1069, 25 Am. St. Rep., 665; East Tennessee & W. N. C. R. Co. v. Cargille, 105 Tenn., 628, 59 S. W., 141; Burke v. Ellis, 105 Tenn., 702, 58 S. W., 855; Stone Company v. Pugh, 115 Tenn., 688, 91 S. W., 199, 4 L. R. A. (N. S.), 804, 12 Am. St. Rep., 881; Cooper v. Overton, 102 Tenn., 211, 222, 52 S. W., 183, 45 L. R. A., 591, 73 Am. St. Rep., 864; Louisville & N. R. Co. v. Ray, 124 Tenn., 16, 134 S. W., 858, Ann. Cas., 1912D, 910; Doyle v. Chattanooga, 128 Tenn., 433, 161 S. W., 997, Ann. Cas., 1915C, 283; Kelley v. Tennessee Electric Power Co., 7 Tenn. App., 555;

DuPont Rayon Co. v. Roberson, 12 Tenn. App., 261; City of Memphis v. Trice, Adm'r, 13 Tenn. App., 607; Ray v. Hutchison, 17 Tenn. App., 477, 68 S. W. (2d), 948; McCay v. Du Pont Rayon Co., 20 Tenn. App., 157, 96 S. W. (2d), 177.

Speaking of the attractive nuisance doctrine this court in Ray v. Hutchison, 17 Tenn. App., 477, 484, 68 S. W. (2d), 948, said:

"It is quite clear that the plaintiff was an intruder or trespasser on the premises whereon he was injured, and the only duty which the owner or occupier ordinarily owes to trespassers is to refrain from willfully or wantonly injuring them.

"But the rule just stated has been modified very generally in this country by the 'attractive nuisance doctrine,' which, broadly stated, is that one who has that on his own premises, or who creates a condition on the premises of another, or in a public place, which may reasonably be apprehended to be a source of danger to children of tender years, is under a duty to take such precautions as a reasonably prudent person would take to prevent injury to such children whom he knows to be accustomed to resort there, or who may, by reason of something there which may be expected to attract them, come there to play."

While the attractive nuisance doctrine has been applied to a variety of conditions or instrumentalities, the tendency both here and elsewhere now is limit rather than to extend that doctrine. McCay v. Du Pont Rayon Co., 20 Tenn. App., 157, 165, 96 S. W. (2d), 177, and cases there cited; United Zinc & Chemical Co. v. Britt, 258 U. S., 268, 42 S. Ct. 299, 66 L. Ed., 615, 36 A. L. R., 28, 31.

Also in this state the question of whether a given condition or instrumentality constitutes an attractive nuisance is a question of law for the court to determine. Louisville & N. Railroad v. Ray, 124 Tenn., 16, 38, 134 S. W., 858, Ann. Cas., 1912D, 910.

It has been frequently held that such common objects as piles of lumber or ties are not an attractive nuisance. Ray v. Hutchison, supra; Missouri, K. & T. R. Co. v. Edwards, 90 Tex. 65, 36 S. W., 430, 32 L. R. A., 825; Great Northern R. Co. v. Willard, 9 Cir., 151 C. C. A., 564; 238 F., 714; Tomlinson v. Vicksburg S. & P. R. Co., 143 La. 641, 79 So. 174; Kramer v. Southern Ry. Co., 127 N. C., 328, 37 S. E., 468, 52 L. R. A., 359; Carr, Adm'x v. Oregon-Washington R. & N. Co., 123 Or., 259, 261 P., 899, 60 A. L. R., 1434; Martino v. Rotondi, 91 W. Va., 482, 113 S. E., 760, 36 A. L. R., 6¹; Macon, D. & S. R. Co. v. Jordan, 34 Ga. App., 350, 129 S. E., 443; Annotations: 36 A. L. R., 34-294; 53 A. L. R., 1344; 60 A. L. R., 1444; 19 L. R. A. (N. S.), 1094-1165; See Louisville & N. R. Co. v. Ray, 124 Tenn., 16, 134 S. W., 858, Ann. Cas., 1912D, 910; Buchanan v. Chicago R. I. & P. Ry. Co., 1929, 9 La. App., 424, 119 So. 703; Gainey v. International & G. N. R. Co., Tex. Civ. App., 1926, 280 S. W. 852.

In Missouri K. & T. R. Co. v. Edwards, supra, the court said:

"Is a pile of ties any more alluring than a pile of wood kept for fuel, or a pile of rails laid aside for making or repairing a farm fence? Children may injure themselves in playing upon either. In such a case we conclude that the law does not devolve the duty upon the owner of the yard to see that the ties are so placed that children may not injure themselves while playing upon them. It has been so held in effect in many cases. [Citing cases. (32 L. R. A., 827).]" [90 Tex. 65, 36 S. W. 432.]

Plaintiff relies upon Snare & Triest Co. v. Friedman, 3 Cir., 169 F., 1, 94 C. C. A., 369, 40 L. R. A. (N. S.), 367; Kansas City, etc. R. Co. v. Matson, 68 Kan., 815, 75 P., 503; Bransom v. Labrot, 81 Ky., 638, 50 Am. Rep., 193; Harper v. Kopp, 73 S. W., 1127, 24 Ky. Law Rep., 2342; Kramer v. Southern Ry. Co., 127 N. C. 328, 37 S. E., 468, 52 L. R. A., 359; St. Louis & S. F. R. Co. v. Underwood, 5 Cir., 194 F., 363, 364; True, etc., Co. v. Woda, 201 Ill., 315, 66 N. E., 369; Spengler v. Williams, 67 Miss., 1, 6 So. 613; Doyle v. City of Chattanooga, 128 Tenn., 433, 444, 161 S. W., 997, Ann. Cas., 1915C, 283. The distinguishing feature in all these cases is that the piles of lumber or timber or the instrumentalities causing the injury were upon a public street or sidewalk where children had a right to be and where their presence should have been anticipated and precautions taken to protect them from injury.

For these reasons we think defendants can not be held liable under the attractive nuisance doctrine and that a verdict should have been directed for them. In the view we have taken, it is unnecessary to consider defendants' other assignments of error upon the amount of the verdict and the charge of the court.

It results that the verdict of the jury is set aside, the judgment of the court reversed, and plaintiff's suit dismissed. Plaintiff and his surety on his prosecution bond will pay the cost of the cause including the cost of this appeal in error.

Faw, P. J., and Crownover, J., concur.